UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

FREEDOM FROM RELIGION
FOUNDATION, INC.; ANNIE LAURIE GAYLOR;
ANNE NICOL GAYLOR; and DAN BARKER,

        Plaintiffs,

v.

        Case No. 11-CV-626

TIMOTHY GEITHNER,
SECRETARY OF THE UNITED STATES
DEPARTMENT OF THE TREASURY,
and DOUGLAS SHULMAN, COMMISSIONER
OF THE INTERNAL REVENUE SERVICE,

        Defendants.

---

## COMPLAINT

---

The Plaintiffs, as their Complaint against the Defendants, allege as follows:

### NATURE OF THE CLAIMS

1. The Plaintiffs seek a declaration under 28 U.S.C. § 2201 that 26 U.S.C. §107, both on its face and as administered by the Internal Revenue Service ("IRS") and the Department of the Treasury ("Treasury"), violates the Establishment Clause of the First Amendment to the Constitution of the United States by providing preferential tax benefits to ministers of the gospel. Plaintiffs request the Court to enjoin the allowance or grant of tax benefits exclusively for ministers of the gospel under §107.

## JURISDICTION AND VENUE

2. This court has federal question jurisdiction pursuant to 28 U.S.C. §1331 with respect to the relief sought against the defendants. The Court also has the authority to issue a declaratory judgment under 28 U.S.C. § 2201. The Court further has the authority to award injunctive relief under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65.

3. The individual plaintiffs are federal taxpayers who object to the allowance of preferential tax benefits under the Revenue Code, including income tax exclusions for housing allowances paid as part of compensation to ministers of the gospel; the individual plaintiffs each receive a designated housing allowance from the plaintiff FFRF but the housing allowances do not qualify for income tax exclusion because the individual plaintiffs are not practicing religious clergy.

4. The individual plaintiffs are members of the plaintiff Freedom From Religion Foundation, Inc. ("FFRF").

5. Venue is appropriate in the District Court for the Western District of Wisconsin, pursuant to 28 U.S.C. §1391(e).

## PARTIES

6. The plaintiff FFRF is a non-profit membership organization that advocates for the separation of church and state and educates on matters of non-theism. FFRF has 17,167 members, residing in every state of the United States and the District of Columbia, including more than 1,300 members in the State of Wisconsin.

7. FFRF represents and advocates on behalf of its members throughout the United States.

8. FFRF's membership includes individuals who are federal taxpayers residing in the Western District of Wisconsin, who are opposed to government preferences and favoritism toward religion; FFRF's principal office is in Madison, Wisconsin.

9. The plaintiff, Anne Nicol Gaylor, a federal taxpayer, resides in Madison, Wisconsin, and she is a Lifetime Member of, and President Emerita of FFRF; she is a non-believer who is opposed to government preferences and favoritism toward religion.

10. The plaintiff, Annie Laurie Gaylor, a federal taxpayer, also resides in Madison, Wisconsin, and she is a Lifetime Member of, and Co-President of FFRF; she is the Executive Editor of FFRF's periodical Freethought Today, and she is a non-believer who is opposed to government preferences and favoritism toward religion.

11. The plaintiff, Dan Barker, a federal taxpayer, also resides in Madison, Wisconsin, and he is a Lifetime Member of, and Co-President of FFRF; he is Public Relations Director of FFRF, and he also is a non-believer who is opposed to governmental preferences and favoritism toward religion; Barker also is an ordained minister who previously was able to utilize the housing allowance paid to him by prior church employers and he could exclude such payments from his taxable income; Barker is no longer a preaching minister, and he does not qualify for the housing allowance under §107 provided by FFRF, a non-profit organization that promotes non-belief.

12. The individual plaintiffs each currently receive a housing allowance designated by the FFRF Executive Council, its governing body; housing allowances also have been recently designated by the Executive Council for 2012; the designated housing allowances paid to the individual plaintiffs do not exceed the plaintiffs' housing-related expenses.

13. The defendant, Timothy Geithner ("Geithner"), is the Secretary of the United States Department of the Treasury, with a principal address of 1500 Pennsylvania Avenue N.W., Washington, D.C. 20220; the defendant Geithner is sued in his official capacity.

14. The Defendant, Douglas Shulman ("Shulman"), is the Commissioner of the Internal Revenue Service, with a principal address of 1111 Constitution Avenue N.W., Washington, D.C. 20224; the defendant Shulman is sued in his official capacity.

## THE ESTABLISHMENT CLAUSE IS VIOLATED BY EXCLUSIVE AND PREFERENTIAL TAX BENEFITS

15. The Establishment Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion."

16. Section 107 of the Internal Revenue Code violates the Establishment Clause because it provides preferential tax breaks exclusively to ministers of the gospel; church ministers can pay virtually all of their housing costs with tax-free dollars under §107, but other taxpayers, like the plaintiffs, do not have this benefit.

17. The §107 tax exclusion can be used by ministers for virtually all of the costs of home ownership, including: Down payment on a home; home mortgage payments, including both interest and principal; real estate taxes; personal property tax; fire and homeowners liability insurance; rental payments; and cost of acquiring a home (i.e. legal fees, bank fees, title fees, etc.). The housing allowance can also be used for maintaining a home. Eligible costs or expenses include: Home improvements; minor repairs; utilities; furnishings and appliances (dishwasher, TV, refrigerator, pool table, vacuum cleaner, personal computer, etc.); home décor (rugs, curtains, plaints, knick knacks, wallpaper, paint, towels, bedding, etc.); lawn care (lawnmower, garden hose, sod, landscape tools, etc.); basic telephone services; cable TV; internet service; pest control; and miscellaneous (light bulbs, cleaning supplies, carpet cleaning, etc.).

18. Preferential tax benefits provided exclusively to religious clergy violate the Establishment Clause; neutrality is required by the Establishment Clause, which means that tax benefits cannot be preferentially provided to ministers of the gospel.

19. Section 107 of the Revenue Code, both on its face and as administered by the defendants Geithner and Shulman, violates the Establishment Clause of the First Amendment because it provides tax benefits only to "ministers of the gospel," rather than to a broad class of taxpayers.

20. Section 107 was adopted in 1954, as a reaction to the Cold War antipathy to atheism, and it was intended to subsidize, promote, endorse, favor, and advance churches, religious organizations, and "ministers of the gospel;" by contrast, §107 also discriminates against the individual plaintiffs who cannot receive the same tax benefits because they are not practicing religious clergy.

21. In order to administer and apply § 107, moreover, the IRS and the Treasury must make sensitive, fact intensive, intrusive, and subjective determinations dependent on religious criteria and inquiries, such as whether certain activities constitute "religious worship" or "sacerdotal functions;" whether a member of the clergy is "duly ordained, commissioned, or licensed;" or whether a Christian college or other organization is "under the authority of" a church or denomination; or whether a full-time cantor in the Jewish faith qualifies as a minister of the gospel. These and other determinations result in "excessive entanglement" between church and state contrary to the Establishment Clause.

### APPLICABLE PROVISIONS OF THE INTERNAL REVENUE CODE AND TREASURY REGULATIONS

22. Section 107 of the Internal Revenue Code (26 U.S.C. § 107) provides as follows: In the case of a minister of the gospel, gross income does not include --

>   (1) the rental value of a home furnished to him as part of his compensation; or
>
>   (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home and to the extent such allowance does not exceed the fair rental value of the home, including furnishings and appurtenances such as a garage, plus the cost of utilities.

23.   Section 107 permits only ministers of the gospel performing religious services to exclude from their taxable income that portion of their compensation that is designated as a housing allowance or housing provided in-kind.

24.   In order to claim the housing allowance, the allowance must be provided as compensation for services that are classified as the duties of a minister of the gospel; this condition is unrelated to any requirement that the minister's residence be used to perform the services of a minister.

25.   Even retired ministers of the gospel are eligible to claim the exclusion for the housing allowance because the allowance is deemed by the IRS to have been paid as part of the retired minister's compensation for past services as a minister.

26.   Section 1.107 1(a) of the Income Tax Regulations ("regulations") implements §107 and provides as follows:

>   In order to qualify for the exclusion, the home or rental allowance must be provided as remuneration for services which are "ordinarily the duties of a minister of the gospel." In general, the rules provided in §1.1402(c) 5 will be applicable to such determination. Examples of specific services the performance of which will be considered duties of a minister for purposes of §107 include the performance of sacerdotal functions, the conduct of religious worship, the administration and maintenance of religious organizations and their integral agencies, and the performance of teaching and administrative functions at theological seminaries.

27.   Although neither §107 of the Code, nor §1.107 1 of the Treasury Regulations, limits the tax benefits of §107 to ministers who are "duly ordained, commissioned, or licensed,"

6

the IRS requires that a minister of the gospel be "duly ordained, commissioned, or licensed" in order for the minister to be entitled to tax benefits.

28. The Treasury regulations do not clarify the meaning of "duly ordained, commissioned, or licensed," and difficult determinations often must be made by the IRS as to whether this requirement is satisfied.

29. The §107 exclusion is available, according to the IRS, only when the minister is given use of a home or receives a housing allowance as compensation for service performed "in the exercise of" his or her ministry, a requirement borrowed from 26 U.S.C. §1402(c)(4).

30. The Treasury regulations under §1402(c)(4) contain detailed rules for determining the circumstances under which services performed by a minister are "in the exercise of" his or her ministry.

31. Section 1.1402(c) 5(b)(2) of the Treasury regulations provides that service performed by a minister in the exercise of a ministry includes: 1) the ministration of sacerdotal functions; 2) the conduct of religious worship; and 3) the control, conduct and maintenance of religious organizations (including the religious boards, societies, and other integral agencies of such organizations) under the authority of a religious body constituting a church or church denomination.

32. Section 1.1402(c) 5(b)(2)(ii) of the Treasury regulations further provides that service performed by a minister in the control, conduct and maintenance of a religious organization relates to directing, managing, or promoting the activities of such organization. This section also provides that any religious organization is deemed to be under the authority of a religious body constituting a church or church denomination if it is organized and dedicated to carrying out the tenets and principles of a faith in accordance with either the requirements or

sanctions governing the creation of institutions of the faith.   The term "religious organization" has the same meaning and application as is given to the term for income tax purposes.

33.     Section 1.1402(c) 5(b)(2)(iv) of the Treasury regulations also provides in relevant part that if a minister is performing service for an organization which is operated as an integral agency of a religious organization under the authority of a religious body constituting a church or church denomination, all service performed by the minister in the control, conduct, and maintenance of such organization is in the exercise of his ministry, including purely secular duties.

34.     The necessary determinations under §107 require that a significant amount of evidence be brought before the IRS to prove that an individual is in fact a minister for purposes of §107.

35.     The inquiries under §107 require complex inquiries into the tenets of religious orthodoxy.   Questions regarding church hierarchy also must be addressed when applying §107 because a religious organization is deemed to be under the authority of a church or church denomination if it is organized and dedicated to carrying out the tenets and principles of a faith in accordance with either the requirements or sanctions governing the creation of institutions of the faith.

36.     The IRS is regularly required to make purely religious determinations in administering §107.

37.     The intricacy of the religious questions arising under §107 create entanglement between the government and religion; difficult determinations must be made, for example, as to whether an organization constitutes an integral agency of a church; the IRS has consistently ruled that ordained ministers who teach at schools that are "integrally" related to churches are

performing services within the exercise of a ministry, no matter what they teach; college administrators, and even basketball coaches, as well as teachers, therefore, qualify for the benefits of §107 if they are ordained as ministers.

### FEDERAL TAX BENEFITS EXCLUSIVE TO MINISTERS VIOLATE THE ESTABLISHMENT CLAUSE AND THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION

38. Section 107 of the Revenue Code provides preferential benefits to "ministers of the gospel" that are not provided to other taxpayers, such as the individual plaintiffs, nor to officers and leaders of other non-profit organizations.

39. Section 107 provides a benefit that is not neutrally available to other taxpayers, including the individual plaintiffs.

40. Section 107 directly benefits ministers and religion, most significantly by lowering a minister's tax burden.

41. Section 107 was not adopted in order to abate any substantial burden on free exercise rights.

42. Congress intended to provide a benefit to religion via the clergy housing exclusion, but a comparable exclusion is not available to other employees; the intent to provide a preferential benefit to religion is not a secular purpose.

43. Congress has acted at every turn to preferentially make tax breaks exclusively available to ministers; the resulting Internal Revenue Code includes provisions, including §107, that are not neutral and generally applicable to other taxpayers on a secular basis.

44. Section 107 has the effect of fostering governmental entanglement with religion, precisely in order to limit the tax break provided by §107 to religious clergy; the IRS must make

complex, intrusive and subjective inquiries into religious matters when applying §107 in order to limit its preferential scope to ministers of the gospel.

45. Section 107, both on its face and as administered by the defendants Geithner and Shulman, violates the Establishment Clause of the First Amendment, and therefore the defendants should be enjoined from any further allowance of such tax benefits exclusively to ministers of the gospel.

46. Section 107 also violates the equal protection rights of the individual plaintiffs.

47. The actions of the defendants have the effect each year of excluding hundreds of millions of dollars from taxation, and this exclusion is available only to ministers of the gospel.

48. The tax preferences afforded ministers of the gospel constitute an exclusive and preferential subsidy to religion in violation of the United States Constitution.

WHEREFORE, the Plaintiffs demand judgment as follows:

A. Declaring that §107 of the Internal Revenue Code violates the Establishment Clause and the Equal Protection Clause of the United States Constitution;

B. Enjoining the defendants from continuing to grant or allow preferential tax benefits under §107 of the Internal Revenue Code exclusively to religious clergy;

C. Awarding the plaintiffs their reasonable costs and disbursements of this action as allowed by law; and

D.      Awarding such further relief as the Court deems just and equitable.

Dated this 13th day of September, 2011.

                                BOARDMAN, SUHR, CURRY & FIELD LLP
                                By
                                _____
                                Richard L. Bolton
                                Wisconsin State Bar No.   1012552
                                1 South Pinckney Street, 4th Floor
                                P. O. Box 927
                                Madison, WI   53701-0927
                                Telephone:  (608) 257-9521
                                Facsimile:  (608) 283-1709
                                Attorneys for Plaintiffs

F:\DOCS\WD\26318\25\A1259439.DOCX

11

CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2011, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification electronically to all attorneys of record.

*Rosalie G. Stapleton*
Rosalie G. Stapleton