IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC.; ANNIE LAURIE GAYLOR; ANNE NICOL GAYLOR; and DAN BARKER, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Civil Case No. 11-cv-626 |

**UNITED STATES' REPLY BRIEF IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
<u>FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

In further support of its Motion to Dismiss Plaintiff's Amended Complaint for Lack of Subject Matter Jurisdiction, the United States submits the following reply to Plaintiffs' Brief in Opposition to Motion to Dismiss. Plaintiffs' Brief (Doc. 20) (hereafter "Plaintiffs' Brief"), and Plaintiffs' Amended Complaint (Doc. 13), show that Plaintiffs fundamentally misconstrue the bedrock requirements for establishing standing under Article III of the United States Constitution: that they must have suffered an injury-in-fact that is fairly traceable to the challenged government action, and that is redressable by a favorable decision. Plaintiffs cannot satisfy this test because they have not suffered an actual injury at the hands of the government. Plaintiffs' Brief ignores the fact that a plaintiff must allege an injury in fact to establish standing, and Plaintiffs' interpretation of the constitutionality of 26 U.S.C. § 107[1] is not a substitute for a

---

[1] All statutory references refer to the Internal Revenue Code (26 U.S.C.), unless otherwise noted.

personal right that has been invaded. See Pederson v. Louisiana State Univ., 213 F.3d 858, 870 (5th Cir. 2000) ("Standing requires alleged misconduct, not proven misconduct. . . . '[I]t is inappropriate for the court to focus on the merits of the case when considering the issue of standing.'" (quoting Hanson v. Veterans Admin., 800 F.2d 1381, 1385 (5th Cir. 1986))). Instead, Plaintiffs attempt to vindicate a "right" to a government that operates within their interpretation of the Constitution, which is not a basis for Article III standing in federal court. As a result, Plaintiffs' Amended Complaint must be dismissed because none of the Plaintiffs have suffered a legal injury sufficient to constitute grounds for standing in this matter.

The doctrine of standing serves to enforce the limitation on federal courts' power to hear only "cases" or "controversies," which consist of actions to enforce or vindicate rights personally held by a plaintiff. "It takes an invasion of one's own rights to create standing." See Freedom from Religion Found., Inc. v. Obama, 641 F.3d 803, 808 (7th Cir. 2011) (denying plaintiffs standing to assert a "generalized grievance" on the grounds that "'the abstract injury in nonobservance of the Constitution asserted by . . . citizens' in general is not a species of injury in fact, even if the upshot is that no one can sue" (citing Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 223 n.13 (1974) (ellipses in original))). The minimum requirements for standing were laid out clearly in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992):

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Id. at 560-61 (internal citations omitted). Each of the elements of standing must be present for a

plaintiff to maintain an action in federal court. Id. Taking each of these elements in turn, it is clear that neither Plaintiffs' Amended Complaint nor Plaintiffs' Brief identifies any personal right held by any of the Plaintiffs and invaded by the government that could give rise to standing in this case. As a result Plaintiffs' Amended Complaint should be dismissed.

## ARGUMENT

### I.  Plaintiffs have not suffered an injury in fact.

At base, Plaintiffs' true complaint is that the United States is acting in a purportedly unconstitutional manner by administering § 107 as part of the overall enforcement of the internal revenue laws. But that complaint does not constitute "an invasion of a legally protected interest." It is neither (a) "concrete and particularized," nor (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Lujan v. Defenders of Wildlife, 504 U.S. at 560-61. Rather, it is the belabored and consistently rejected argument that an individual has standing to sue to require the government to act in accordance with his or her interpretation of the Constitution. "[A] plaintiff raising only a generally available grievance about government -- claiming only harm to his and every citizen's interest in proper application of the Constitution and laws and seeking relief that no more directly and tangibly benefits him than it does the public at large -- does not state an Article III case or controversy." Lujan, 504 U.S. at 573-74. This argument has been rejected repeatedly for good reason:

> Were we to recognize standing premised on an "injury" consisting solely of an alleged violation of a "'personal constitutional right' to a government that does not establish religion," a principled consistency would dictate recognition of respondents' standing to challenge execution of every capital sentence on the basis of a personal right to a government that does not impose cruel and unusual punishment, or standing to challenge every affirmative-action program on the basis of a personal right to a government that does not deny equal protection of

> the laws, to choose but two among as many possible examples as there are commands in the Constitution.

Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 489-490, n.26 (1982); accord Obama, 641 F.3d at 808.

Plaintiffs attempt to cover their true grievance and create standing for themselves by arguing that they have suffered the injury of "discriminatory treatment" because they receive a housing allowance from their employer which, they assert, would be exempt from federal income taxation were they clergy. (Pls.' Br. at 2.) Except for "the application of religious criteria by the IRS and Treasury Department," they allege, Individual Plaintiffs "would otherwise qualify for the housing exemption of § 107." (Id. at 8.) But this argument does not create an injury in fact at all, much less one that is both (a) concrete and particularized and (b) not conjectural or hypothetical.

### A. Plaintiffs have not alleged a concrete and particularized injury.

Plaintiffs do not allege that the IRS or the Treasury Department has ever taken any action with respect to Individual Plaintiffs' own tax liabilities, much less action that involved discrimination on the basis of religion or any other constitutionally impermissible basis. As a result, Plaintiffs cannot identify a concrete or particularized injury in this case. Their argument that they have suffered "discriminatory treatment" at the hands of the government demonstrates a fundamental lack of understanding about the system of federal taxation as it operates in the United States. Namely, § 107 permits a taxpayer to exclude certain income from federal income taxation. As with numerous exemptions and deductions available under the Tax Code, a taxpayer must claim the exemption under § 107. The IRS does not review the millions of individual federal income tax returns filed each year and volunteer ideas regarding the exemptions or

deductions for which a particular taxpayer may qualify. If a taxpayer does not claim the benefits of § 107, the IRS will have no reason to determine whether the taxpayer is entitled to those benefits. Individual Plaintiffs fail to allege that they have each claimed the § 107 exemption in the manner prescribed by the IRS. As a result, Individual Plaintiffs are necessarily not "similarly situated to ministers who receive the benefit of the exemption" (Pls.' Br. at 8.) Any clergy who actually receive the exemption under § 107, by definition, have claimed it.

Plaintiffs fail to establish a concrete or particularized injury because they have not alleged that any of the following has occurred: 1) that they claimed a § 107 exemption that the IRS disallowed, resulting in a tax deficiency; 2) that they have filed a claim for refund of income taxes paid on their housing allowance, in light of § 107, which has been denied by the IRS; or 3) that FFRF, as employer of Individual Plaintiffs, has applied for a refund of FICA taxes paid on amounts that included the housing allowances as part of the wages paid to Individual Plaintiffs. Without these or any other requests made to the IRS, neither the IRS nor the Treasury Department could have discriminated against Plaintiffs in any concrete or particularized way, let alone on the basis of religion (or lack thereof), as Plaintiffs contend.

The fact that Individual Plaintiffs have not obtained an exemption pursuant to § 107 as a result of their failure to actually claim the exemption does not constitute "discriminatory treatment" or a "discriminatory obligation" (see Pls.' Br. at 8; Am. Compl. ¶ 47) upon them. (See generally Pls.' Br. (failing to explain any "discriminatory obligation" resulting from the operation of § 107); Am. Compl. (same).) Plaintiffs must merely follow the same steps required of any taxpayer who claims the § 107 exemption, or who challenges a determination that they are not eligible, in the same manner as any other taxpayer must. As Plaintiffs themselves admit, "[t]he injury-in-fact in an equal protection case is the denial of equal treatment, not the ultimate

inability to obtain the benefit." (Pls.' Br. at 16 (citing Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, 508 U.S. 656, 666 (1993)) (emphasis added) (citation omitted).) But Plaintiffs are not "persons who are personally denied equal treatment under the law." (See Pls.' Br. at 16 (citing Doe v. Lower Marion School District, 665 F.3d 524, 542 (3rd Cir. 2011)).) Unless and until Plaintiffs initiate some kind of a claim related to § 107, and only if the IRS then treats them in a discriminatory fashion inconsistent with the Constitution, could the IRS deprive Plaintiffs of any rights that would constitute a concrete, particularized injury. Because Plaintiffs do not make such allegations, there is no basis for their conclusions they have suffered any kind of injury in fact.

Because Plaintiffs are not attempting to vindicate personal rights or redress concrete injuries, Plaintiffs' reliance on Texas Monthly, Inc. v. Bullock, 489 U.S. 1 (1989), and Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221 (1987), is misguided. Those cases do not provide any support for their contention that simply being (purportedly) "similarly situated taxpayers" in a world where a tax exemption is provided on the basis of qualifying criteria is a sufficient injury to provide the basis for standing. (See Pls.' Br. at 9.) The plaintiffs in both Texas Monthly and Arkansas Writers' Project had actually paid the full amounts of the taxes otherwise owed and attempted to challenge the statutes by filing a claim for refund under the procedures set out by the relevant statutes in order to obtain a refund. Thus, each presented a case where there was a concrete amount in controversy, which was squarely the result of the government's denial of the refund to the plaintiff. Neither case featured a plaintiff who failed to properly contest the relevant tax. In the explicit words of the Supreme Court, "a live controversy persists over Texas Monthly's right to recover the $149,107.74 it paid, plus interest." Texas Monthly, 489 U.S. at 8. Such controversies were clearly concrete enough to be adjudicated by the federal judiciary.

Recently, Ariz. Christian Sch. Tuition Org. v. Winn, — U.S. —, 131 S. Ct. 1436, 1449 (2011) (hereafter, "ACSTO"), explicitly held that the existence of tax credits that provide a benefit to religion do not provide a taxpayer with standing to challenge the credit, even under the less restrictive standard for taxpayer standing described in Flast v. Cohen, 392 U.S. 83, 102-03 (1968). ACSTO reiterated that a plaintiff must still establish an injury in fact in order to have standing, regardless of whether the Flast exemption is invoked to describe that injury in fact. The Court noted that its decision did not change what constitutes an injury for standing purposes because a plaintiff "may demonstrate standing on the ground that they have incurred a cost or been denied a benefit on account of their religion." 131 S. Ct. at 1440 (emphasis added). Plaintiffs quote ACSTO out of context, and ignore the requirement that a plaintiff "incur[] a cost or [be] denied a benefit" in order to have standing to sue upon a purportedly discriminatory tax statute. (See Pls.' Br. at 2.) They assert that a plaintiff need only be "not eligible for a tax benefit on account of religious criteria" (id.), but that is not consistent with the actual language of ACSTO, or the injury in fact requirement.

ACSTO, as superseding precedent, renders Finlator v. Powers, 902 F.2d 1158 (4th Cir. 1990), a faulty basis for Plaintiffs to establish standing in this case. In ACSTO, the Supreme Court made it clear that a personal right must be at stake in order to challenge a tax credit. See 131 S. Ct. at 1447-48. No such personal rights are inherently at issue when the challenged statute provides a credit or exemption to other taxpayers to which a Plaintiff objects, even on Establishment Clause grounds. See id. Finlator itself relied heavily on Texas Monthly and Arkansas Writer's Project, but in both of those cases, the plaintiffs contested the tax and sought a refund of taxes paid in order to establish some direct harm suffered by them. See Texas Monthly, 489 U.S. at 6; Arkansas Writer's Project, 481 U.S. at 1161. The Finlator court, without support,

incorrectly rejected the argument that such an invasion of personal rights was a necessary prerequisite in order to have standing. See 902 F.2d at 1162. Acknowledging that the taxpayer plaintiffs had to show some injury connected to the alleged illegal statute, the Finlator court found that the taxpayer plaintiffs suffered actual injury simply because they had to protest the tax in order to claim the exemption from taxation. Neither the Supreme Court nor the Seventh Circuit Court of Appeals has ever adopted the rationale articulated in Finlator. See ACSTO, 131 S. Ct. at 1447-48.[2]

The conclusion in Finlator is incongruent with prior and subsequent Supreme Court precedent. If such harm were all that is needed in order to have standing to seek a tax deduction or exemption, then every taxpayer would have standing to challenge and/or seek every single deduction and exemption found in the Internal Revenue Code simply because he or she is a taxpayer. That result is in direct conflict with the clear line of cases that deny such broad taxpayer standing utilized to air general grievances. See Flast, 392 U.S. at 101 ("the emphasis in standing problems is on whether the party invoking federal court jurisdiction has 'a personal stake in the outcome of the controversy,' and whether the dispute touches upon 'the legal relations of parties having adverse legal interests'" (internal citations omitted)); United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 689 n.14 (1973) (standing doctrine is meant "to distinguish a person with a direct stake in the outcome of a litigation – even

---

[2] Other cases where courts have found that plaintiffs lacked standing in the absence of allegations of an invasion of a personal right include Hein v. Freedom from Religion Found., Inc., 551 U.S. 587 (2007); Freedom from Religion Found., Inc. v. Obama, 641 F.3d 803 (7th Cir. 2011); Freedom from Religion Found. v. Zielke, 845 F.2d 1463 (7th Cir. 1988); Freedom from Religion Found., Inc. v. Ayers, 748 F. Supp. 2d 982 (W.D. Wis. 2010); Freedom from Religion Found., Inc. v. Olson, 566 F. Supp. 2d 980 (D.N.D. 2008); and Freedom from Religion Found., Inc. v. Nicholson, 448 F. Supp. 2d 1028 (W.D. Wis. 2006).

though small – from a person with a mere interest in the problem"); see also Laskowski v. Spellings, 546 F.3d 822, 827 (7th Cir. 2008) (emphasizing the narrowness of the Flast exception to the general bar against taxpayer standing); cf. § 7422 (prescribing the process by which a taxpayer may sue for a refund). Therefore, Finlator provides no support for Plaintiffs' assertions of standing.

For all of these reasons, Plaintiffs' purported injuries are in no way concrete or particular to them in such a manner as to ensure "that the plaintiff has a sufficient personal stake in the outcome of the controversy to ensure vigorous presentation of the issues." See Apter v. Richardson, 510 F.2d 351, 353 (7th Cir. 1975) (citing Flast, 392 U.S. at 102-03). Plaintiffs' true grievance is that the government is not acting according to their interpretation of the Constitution, which is not an injury that may provide standing to sue. See Obama, 641 F.3d at 808. This grievance and their resulting interest in the relief they request is, at best, shared with every taxpayer who does not claim the exemption provided by § 107. As a result, Plaintiffs' purported injuries cannot be considered concrete or particularized.

**B.      Plaintiffs' purported injury is conjectural and hypothetical, not actual or imminent.**

Individual Plaintiffs' allegation that the IRS would deny them the § 107 exemption on the basis of religious criteria is conjectural and hypothetical, not actual or imminent. Speculative legal conclusions that one would be entitled to a benefit provided to another in the absence of the challenged governmental action do not suffice to constitute a concrete injury. See Warth v. Seldin, 422 U.S. 490, 504 (1975) (finding that plaintiffs had not suffered a concrete injury because "none of these petitioners has a present interest in any Penfield property; none is himself subject to the ordinance's strictures; and none has ever been denied a variance or permit by

respondent officials"). As described above, Plaintiffs do not allege that they have actually tried to claim the § 107 exemption or claim a refund based thereon. Instead of relating <u>facts</u> that would allege an actual injury, the entire Amended Complaint contains speculative allegations regarding how the IRS <u>might</u> treat the Plaintiffs' claims in the event they actually claim the exemption pursuant to § 107. (See Am. Compl. ¶ 48 ("The individual plaintiffs <u>would</u> be entitled to claim a housing allowance exclusion from income -- but for the religious criteria applied by the IRS and Treasury Department in administering and applying §107." (emphasis added)).) But if Plaintiffs do claim the exemption and it is allowed by the IRS, they would not suffer any injury of discrimination on the basis of religion, or any other impermissible basis.[3] It would be improper to adjudicate Plaintiffs' claims based on speculation that the IRS would treat their tax liabilities in any particular way.

Furthermore, Plaintiffs' alleged injury of purported discriminatory treatment is neither actual nor imminent. Neither the IRS nor the Treasury Department have deprived Plaintiffs of any rights. And it is impossible, or at least entirely speculative, to assume that either agency is

---

[3] Under § 107, individuals subscribing to a variety of beliefs have qualified as "ministers of the gospel," as that term has been broadly interpreted. Given this broad interpretation, conceivably an individual may qualify as a minister for federal tax purposes without regard to the faith-based content of his or her beliefs. The IRS imposes no requirement regarding the content of the beliefs of a religious organization, nor does it require that a person designated as a "minister" subscribe to theistic beliefs.

Nor does the IRS require that an individual maintain theistic beliefs in order to perform functions that may be considered the duties of a minister of the gospel, such as officiating weddings or leading congregations, in order to qualify as a minister of the gospel for § 107 purposes. Plaintiffs' contentions about the interplay between § 107 and faith-based religious organizations also presume too much, given that nothing precludes non-theists from organizing around their own beliefs. See generally ALAIN DE BOTTON, RELIGION FOR ATHEISTS: A NON-BELIEVER'S GUIDE TO THE USES OF RELIGION (Pantheon ed., March 6, 2012). Such non-theistic organizations' "ministers" may serve a similar function as ministers of faith-based religious organizations for tax purposes.

poised to deny Plaintiffs any rights, given that Plaintiffs have not attempted to claim an exemption under § 107 or demand a refund of taxes based thereon. As described above, the IRS can take no action with regard to the § 107 exemption and Plaintiffs' tax liabilities until Plaintiffs make some sort of claim based upon it. Plaintiffs have offered neither facts nor case law to support the position that the IRS has denied (or will deny) them an exemption under § 107 on the basis of the content of the individual's religious beliefs. As a result, Plaintiffs' Amended Complaint simply does not allege an actual invasion of Plaintiffs' rights.

Because many courts have implicitly or explicitly ruled that § 107 and other religion-specific tax provisions are constitutional, see Warnke v. United States, 641 F. Supp. 1083, 1084-85, 92 (E.D. Ky. 1986); Templeton v. Commissioner, 719 F.2d 1408, 1412 & n.5 (7th Cir. 1983), it is particularly important that the Plaintiffs allege an actual injury, rather than a conjectural assumption that such a constitutional violation could or does occur. Because Plaintiffs have not alleged that an Individual Plaintiff was denied an exemption under § 107 on the grounds of the contents of their religious beliefs (or lack thereof) or any other discriminatory criteria, the Amended Complaint is inherently speculative, fatally flawed, and should be dismissed.

### C. Plaintiffs concede that they do not have taxpayer standing to sue for the relief requested.

Plaintiffs also concede that they do not have standing to maintain this action pursuant to the exception to the traditional standing requirements described in Flast, 392 U.S. at 102-03. Because Plaintiffs do not rely on their status as taxpayers to maintain this action, they may not assert any of the generalized grievances that suffuse their Amended Complaint because they do not allege specific injuries to personal rights or a causal relationship to trace injuries to the alleged government wrongdoing. Moreover, because § 107 does not increase the tax liability of

any taxpayer, nor does it impose any administrative requirements on taxpayers who do not take the exemption, there is no affirmative burden or obligation created by § 107. As a result, Plaintiffs' contention that § 107 somehow "imposes obligations on the individual plaintiffs that are not imposed on ministers" (see Am. Compl. ¶ 47), is incomprehensibly vague and conclusory, and does not suffice to constitute an injury under any theory.

## II.     Plaintiffs' grievance is not fairly traceable to government action.

As discussed throughout, Plaintiffs have not alleged that the government has taken any action against them or their individual income tax liabilities. They have purportedly received portions of their salaries designated as "housing allowances," but have not alleged that they have done anything further to claim the § 107 exemption (which anyone seeking the benefits of § 107 must do). As a result, there is no way for Plaintiffs to allege that any injury they have purportedly suffered is fairly traceable to any government action. See Ecclesiastical Order of ISM of AM, Inc. v. Comm'r, 80 T.C. 833, 842 (1983) ("Petitioner's constitutional arguments are based on the assumption that respondent has singled it out for attack because of its 'non-traditional' or 'unorthodox' beliefs. We find, however, that respondent denied petitioner's application for tax-exempt status, not because of petitioner's beliefs, but because of petitioner's substantial nonexempt purpose."). The government did not prepare Plaintiffs' tax returns and decline to take an exemption under § 107 on their behalf. Instead, the fact that Plaintiffs have not been denied or benefitted from the tax exemption they challenge is solely traceable to their failure to claim it. Therefore, neither an Establishment Clause nor Equal Protection injury can be said to be fairly traceable to any government action in this case. The line of causation begins and ends with Plaintiffs themselves.

Nor does <u>Martinez, et al. v. Clark County, Nevada</u>, 2012 U.S. Dist. LEXIS 5313 (D. Nev. Jan. 18, 2012), provide Plaintiffs with a new theory to allow them to evade administrative action yet still maintain standing. In both <u>Martinez</u> and <u>Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am.</u>, 508 U.S. at 666, the barriers at issue precluded the plaintiffs in those cases from even applying for the challenged programs. <u>See</u> <u>Martinez</u>, 2012 U.S. Dist. LEXIS 5313, at *15-16 ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." (citing <u>Northeastern Fla. Chapter of Assoc. Gen. Contractors</u>, 508 U.S. at 666)). Unlike the factual situations in those cases, here there is no affirmative, religiously discriminatory bar preventing Plaintiffs from attempting to take the tax exemption provided in § 107, even if they do so solely in order to challenge its constitutionality. Instead, it is mere presumption and speculation to assume that the IRS would decide whether Plaintiffs qualified for the § 107 exemption on the basis of the contents of their beliefs on religion, rather than on some other religiously-neutral or other constitutionally valid criterion.

**III.     The availability of a remedy alone does not create standing.**

The main focus of Plaintiffs' Brief appears to be that there is a sufficient remedy available for their purported injury: nullification of § 107. The United States does not dispute that, in properly presented constitutional challenges, nullification is an available remedy when there is no other option to redress an actual injury. However, Plaintiffs' logic is faulty. Plaintiffs' Brief presupposes that if nullification is an available remedy, then they must have suffered an injury which requires nullification. But that is not how Article III standing is conceived. Article III requires that a plaintiff establish each and every element of standing, including that a plaintiff has suffered an injury in fact and that the injury is fairly traceable to the challenged action of a

- 13 -

defendant. See Lujan, 504 U.S. at 561. Only if each of these elements are independently established, then the question of remedy becomes dispositive of whether standing has been established. See id.

Because Plaintiffs have not suffered an injury in fact, Plaintiffs' efforts to describe cases where nullification has been held to be an appropriate remedy are misguided. They offer no facts that show that the United States has treated them, or their individual income tax liabilities, any differently than any other taxpayer because of their particular beliefs or religious affiliation. Instead, their tax liabilities have been determined only by their own failure to claim an exemption. Consequently, the only "remedy" available lies with the Plaintiffs themselves, and not the federal judiciary. As a result, they may not mount this constitutional challenge to § 107:

> [A]ll challenges to statutes arise when a particular litigant claims that a statute cannot be enforced against her. In ruling on such challenges, courts employ doctrinal tests of constitutional validity . . . . And in applying such tests to resolve particular claims, courts often engage in reasoning indicating that a statute is invalid in whole or in part, and not merely as applied. In this sense, facial challenges undoubtedly occur, and they are important. Nonetheless, it is more misleading than informative to suggest that "facial challenges" constitute a distinct category of constitutional litigation. Rather, facial challenges and invalidations are best conceptualized as incidents or outgrowths of as-applied litigation.

Richard H. Fallon, Jr., As-Applied and Facial Challenges and Third-Party Standing, 113 HARV. L. REV. 1321, 1324 (2000); see also id. at 1336-39 (describing "facial challenges as 'incidents' of as-applied adjudication").

## CONCLUSION

Because Plaintiffs fail to allege that they have suffered an injury in fact, fairly traceable to an action taken by the United States, they fail to meet the requirements for Article III standing to sue. Their position that they have standing disregards the important limitation on the exercise of federal judicial power imposed by the standing requirements. Without a concrete controversy

at stake, Plaintiffs ask this Court to issue an advisory opinion on the constitutionality of a statute, a practice constitutionally prohibited to federal courts. Plaintiffs' Brief consists of nothing more than an academic exploration of the purported merits of their asserted cause of action devoid of any actual case or controversy that could illuminate their legal allegations by setting them in a factual context. For these reasons, and the reasons stated in the United States' brief in support of its motion to dismiss, the Amended Complaint should be dismissed for lack of subject matter jurisdiction.

Dated: April 20, 2012

Respectfully submitted,

JOHN W. VAUDREUIL
United States Attorney

*/s/ Erin Healy Gallagher*
ERIN HEALY GALLAGHER
D.C. Bar Number: 985670
U.S. Department of Justice, Tax Division
Post Office Box 7238
Washington, D.C. 20044
Telephone: (202) 353-2452
Fax: (202) 514-6770
E-mail: erin.healygallagher@usdoj.gov


*/s/ Richard Adam Schwartz*
RICHARD ADAM SCHWARTZ
California Bar Number: 267469
U.S. Department of Justice, Tax Division
Post Office Box 683
Washington, D.C. 20044
Telephone: (202) 307-6322
Fax: (202) 307-0054
E-mail: richard.a.schwartz@usdoj.gov

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

      I certify that, on April 20, 2012, service of the foregoing United States' Reply Brief in Further Support of Its Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Subject Matter Jurisdiction was made upon Plaintiffs by filing it with the Clerk of Court using the CM/ECF system.

                                           */s/ Erin Healy Gallagher*
                                           ERIN HEALY GALLAGHER