IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FREEDOM FROM RELIGION FOUNDATION, INC.,
ANNIE LAURIE GAYLOR, ANNE NICOL GAYLOR
and DAN BARKER,

                                                          OPINION AND ORDER

                          Plaintiffs,

                                                             11-cv-626-bbc

      v.

UNITED STATES OF AMERICA,

                          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiffs Freedom from Religion Foundation, Inc., Annie Laurie Gaylor, Anne Nicol Gaylor and Dan Barker brought this lawsuit under the Administrative Procedure Act, 5 U.S.C. § 702, to challenge the constitutionality of 26 U.S.C. § 107, which gives a tax exemption to any "minister of the gospel" for compensation received related to certain housing expenses. In particular, plaintiffs contend that § 107 violates their rights under the establishment clause of the First Amendment and the equal protection component of the Fifth Amendment. They seek to enjoin the government from "continuing to grant or allow preferential and discriminatory tax benefits under §107 of the Internal Revenue Code exclusively to religious clergy." Am. Cpt., dkt. #13, at 12.

      In an order dated June 28, 2012, dkt. #24, I questioned whether plaintiffs could sue under § 702 because that statute is limited to challenges of "agency action" and requires the

1

plaintiffs to name "the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance" with plaintiffs' proposed injunction. I agree with the parties that any failure by plaintiffs to comply with § 702 may be resolved by naming as defendants Timothy Geithner (Secretary of the Department of the Treasury) and Douglas Shulman (Commissioner of the Internal Revenue Service), who are in charge of the agencies responsible for administering § 107. Because plaintiffs seek to name Geithner and Shulman in their official capacities as agents of the United States, I may amend the caption to include them without requiring plaintiffs to file a new complaint. E.g., Jaros v. Illinois Dept. of Corrections, 684 F.3d 667, 670 (7th Cir. 2012).

With that question resolved, I turn to defendant's motion to dismiss for lack of subject matter jurisdiction on the ground that plaintiffs have not been injured by § 107 and therefore lack standing to sue. In response, plaintiffs say that their injury is the unequal treatment they receive under the statute. Because a portion of their salary is designated as a housing allowance, they say that they would be entitled to an exemption under § 107 but for the limitation to "ministers of the gospel." Defendant acknowledges that the denial of a tax exemption constitutes an adequate injury for the purpose of standing, but it argues that plaintiffs cannot file a federal lawsuit until they claim an exemption on their tax returns and the IRS denies the claim.

I am denying defendant's motion to dismiss. Because it is clear from the face of the statute that plaintiffs are not entitled to the exemption, I see no reason to make their standing contingent on the futile exercise of making a formal claim with the IRS.

ALLEGATIONS OF FACT

Plaintiff Freedom from Religion Foundation is a non-profit membership organization that "advocates for the separation of church and state and educates on matters of non-theism." The foundation's principal office is in Madison, Wisconsin.

Plaintiffs Annie Laurie Gaylor and Dan Barker are the co-presidents of the foundation; Anne Nicol Gaylor is the president emerita. The foundation's executive council provides each of the individual plaintiffs a housing allowance that does not exceed plaintiffs' housing-related expenses.

Plaintiffs are challenging the constitutionality of 26 U.S.C. § 107, which is titled "Rental value of parsonages" and provides:

> In the case of a minister of the gospel, gross income does not include--
>
> (1) the rental value of a home furnished to him as part of his compensation; or
>
> (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home and to the extent such allowance does not exceed the fair rental value of the home, including furnishings and appurtenances such as a garage, plus the cost of utilities.

Plaintiff Barker is a former ordained minister who previously excluded his housing allowance from his taxable income, but no longer does so. The individual plaintiffs believe they would be entitled to claim the § 107 exemption if it were not limited to ministers of the gospel.

OPINION

The sole issue raised by defendant's motion to dismiss is whether plaintiffs have standing to challenge the constitutionality of 26 U.S.C. § 107; defendant does not challenge the merits of plaintiffs' complaint at this stage of the case. The standard for determining standing under the Constitution is well established: plaintiffs must show that they suffered an injury in fact that is fairly traceable to the defendant's action and capable of being redressed by a favorable decision from the court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Because each of the individual plaintiffs is a member of the foundation and a purpose of the foundation is related to plaintiff's claims in this lawsuit, the foundation's standing rises and falls with the members'. Sierra Club v. Franklin County Power of Illinois, LLC, 546 F.3d 918, 924 (7th Cir. 2008).

A. Injury in Fact

1. Taxpayer standing

Most of defendant's opening brief is devoted to arguing that plaintiffs do not have what courts refer to as "taxpayer standing." Under that theory, the plaintiff objects to a particular government expenditure and claims as an injury the misuse of the plaintiff's tax dollars. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 343-44 (2006) ("[T]he alleged injury is based on the asserted effect of the allegedly illegal activity on public revenues, to which the taxpayer contributes."). This theory has been rejected by the Supreme Court in most cases on the ground that "interest in the moneys of the Treasury . . . is shared with

4

millions of others; is comparatively minute and indeterminable; and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity." Frothingham v. Mellon, decided with Massachusetts v. Mellon, 262 U.S. 443, 486-87 (1923).  See also Arizona Christian School Tuition Organization v. Winn, 131 S. Ct. 1436, 1439 (2011) ("[T]he mere fact that a plaintiff is a taxpayer is not generally deemed sufficient to establish standing in federal court.").

I need not consider whether plaintiffs have taxpayer standing because they are not asserting that argument in this case.  The foundation raised it in a previous challenge to § 107 brought in the Eastern District of California and received a favorable ruling from the court after the government filed a motion to dismiss.  Freedom From Religion Foundation, Inc. v. Geithner, 715 F. Supp. 2d 1051 (E.D. Cal. 2010).  However, the parties later agreed to dismissal of the case without prejudice under Fed. R. Civ. P. 41(a)(1)(A)(ii) after the Supreme Court decided Winn, reversing a decision from the Court of Appeals for the Ninth Circuit on which the district court had relied for its ruling on taxpayer standing.  Case No. 2:09-2894-WBS-DAD (C.D. Cal.), dkt. ##87-88.  Plaintiffs have not included a theory of taxpayer standing in their complaint or their brief in this case.

2. Ideological injuries

Defendant raises a second argument for plaintiffs' lack of standing, which is that plaintiffs' alleged injury is their disagreement with the government's conduct, a claim that

5

is not sufficient to confer standing. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 483 (1982); United States v. Richardson, 418 U.S. 166, 176-77 (1974). This is another strawman. It is undoubtedly true that plaintiffs object to § 107 because they believe it violates the establishment clause and that this may be the primary reason they filed the lawsuit, but that is not the injury plaintiffs are alleging for the purpose of showing standing.

3. Unequal treatment

Plaintiffs identify their injury as the alleged unequal treatment they have received from defendant: "ministers of the gospel" may receive a tax exemption for certain housing expenses, but plaintiffs may not. Thus, plaintiffs' injury is not just that they object to the exemption that ministers of the gospel receive, but that plaintiffs are being denied the same benefit.

The parties agree that a person who is denied a tax exemption that others receive has suffered an injury in fact. That much is established by Supreme Court precedent. Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 7-8 (1989) (general interest magazine had standing to challenge state tax exemption received by religious publications); Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 224-25 (1987) (same). See also Winn, 131 S. Ct. at 1439 ("[P]laintiffs may demonstrate standing on the ground that they have incurred a cost or been denied a benefit on account of their religion. Those costs and benefits can result from alleged discrimination in the tax code, such as when the availability of a tax exemption

6

is conditioned on religious affiliation."). The question presented by defendant's motion is whether a plaintiff's injury arises from the allegedly discriminatory statute itself or not until the plaintiff claims the exemption and the Internal Revenue Service denies it. Texas Monthly and Arkansas Writers' Project both involved plaintiffs that had been denied a tax refund by state authorities, but the Court did not say in either case whether seeking a refund was required to establish standing, so those cases do not help to resolve the dispute.

a. Is a pre-enforcement challenge appropriate in this case?

Distilled, defendant's objection is that plaintiffs do not have standing to bring a pre-enforcement challenge to 26 U.S.C. § 107, but are limited to challenging the statute as applied to them. However, there is no categorical bar under federal standing doctrine from challenging a statute on its face before it is applied, although special concerns may apply. Brandt v. Village of Winnetka, Illinois, 612 F.3d 647, 649-50 (7th Cir. 2010) ("[P]re-enforcement challenges [to a potential First Amendment violation] are within Article III."). See also Santa Fe Independent School District v. Doe, 530 U.S. 290, 313-14 (2000) (considering facial challenge under establishment clause to policy that had not yet been enforced); Virginia v. American Booksellers Association, Inc., 484 U.S. 383, 393 (1988) (concluding that plaintiffs had standing to bring preenforcement challenge); Owner-Operator Independent Drivers Association, Inc. v. Federal Motor Carrier Safety Administration, 656 F.3d 580, 586-87 (7th Cir. 2011) (same). In general, "[c]hallenges to statutes as written, without inquiring into their application, are appropriate when details of implementation are

7

inconsequential." Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, Illinois, 9 F.3d 1290, 1291-92 (7th Cir. 1993). In other words, plaintiffs have standing to challenge a statute before it has been applied to them when the injury to their First Amendment rights is clear from the face of the statute. That is the situation in this case.

What purpose would it serve for plaintiffs to attempt to claim the exemption before challenging it in court? If the meaning of § 107 as applied to plaintiffs were in doubt, then defendant might have a valid point that plaintiffs' claims of injury are premature. E.g., Warnke v. United States, 641 F. Supp. 1083, 1084-85 (E.D. Ky. 1986) (self employed minister sought refund under § 107, arguing that statute did not require him to be employed by third party). However, there is no plausible argument that plaintiffs could make that they qualify as "ministers of the gospel," so it would be pointless to require plaintiffs to jump through the hoop of filing a claim to prove that they are not entitled to the exemption. Cf. California Medical Association v. Federal Electric Commission, 453 U.S. 182, 192 (1981) (concluding that plaintiffs had standing, noting that they "expressly challenge the statute on its face, and there is no suggestion that the statute is susceptible to an interpretation that would remove the need for resolving the constitutional questions raised"); American Civil Liberties Union of Illinois v. Alvarez, 679 F.3d 583, 593-94 (7th Cir. 2012) ("This is not a case in which the threat of prosecution hinges on a highly attenuated claim of speculative future events or unknowable details about the manner in which the statutory violation will be committed or enforced.").

The purpose of standing rules is not to waste the plaintiffs' and the government's time

8

and resources in unnecessary busy work that will lead to an obvious outcome. Just as courts have held that plaintiffs need not engage in conduct clearly prohibited by a statute before challenging the statute, e.g., Ezell v. City of Chicago, 651 F.3d 684, 695-96 (7th Cir. 2011); Schirmer v. Nagode, 621 F.3d 581, 586 (7th Cir. 2010), I see little reason to require plaintiffs to claim an exemption that they would have no good faith basis to claim, an act that could make plaintiffs vulnerable to civil sanctions. Mulcahy, Pauritsch, Salvador & Co., Ltd. v. Commissioner, 680 F.3d 867, 872 (7th Cir. 2012) (understatement of tax liability without good faith basis may subject taxpayer to monetary penalties).

In a footnote in its reply brief, defendant argues that it is "conceivable" that plaintiffs could qualify for the exemption under § 107 because the IRS does not require "that an individual maintain theistic beliefs in order to perform functions that may be considered the duties of a minister of the gospel." Dft.'s Br., dkt. #23, at 10 n.3. It does not cite any regulations or decisions for this proposition, but rather a popular nonfiction book. Id. (citing Alain de Botton, Religion for Atheists (Pantheon ed., Mar. 6, 2012)). Regardless whether the statute requires "theistic beliefs" to qualify for the exemption, there is no reasonable interpretation of the statute under which the phrase "minister of the gospel" could be construed to include employees of an organization whose purpose is to keep religion out of the public square.

Nothing in the implementing regulations or decisions of the IRS or the federal courts suggests a different interpretation. Although the tax courts have construed § 107 expansively to include non-Christian religions, e.g., Silverman v. Commissioner, 57 T.C. 727, 731

9

(1972); Salkov v. Commissioner, 46 T.C. 190, 194 (1966), a person does not qualify for the exemption unless his or her "ministry includes the ministration of sacerdotal functions and the conduct of religious worship, and the control, conduct, and maintenance of religious organizations (including the religious boards, societies, and other integral agencies of such organizations), under the authority of a religious body constituting a church or church denomination." 26 C.F.R. § 1.1402(c)-5(b)(2). See also Carter v. United States, 973 F.2d 1479, 1481 (9th Cir. 1992) (§ 107 applies to "members of the clergy"); Flowers v. United States, 1981 WL 1928, *6 (N.D. Tex. 1981) (upholding denial of exemption because housing allowance was for educational rather than sacerdotal functions); Colbert v. Commissioner, 61 T.C. 449 (1974) (taxpayer did not qualify for exemption because his "primary emphasis . . . was in warning and awakening people to the dangers of communism and in educating them as to the principles of communism" rather than "religious instruction in the principles laid down by Christ"). A church is similarly defined as an organization with duties that "include the ministration of sacerdotal functions and the conduct of religious worship." 26 C.F.R. § 1.511-2(a)(3). See also Whittington v. Commissioner, 2000 WL 1358652, *3 (U.S. Tax Ct. 2000) ("At a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship.").

Defendant does not address the language of the statute and implementing regulations, much less explain how the individual plaintiffs could meet the definition for "ministers" or the foundation could meet the definition for "church." Thus, it seems that the only way that plaintiffs could receive an exemption for housing expenses would be for the IRS to flagrantly

violate § 107 and disregard its own interpretative regulations. I decline to assume that this is a realistic possibility.

b. Other cases addressing a party's standing to challenge tax exemptions

Although neither the Supreme Court nor the Court of the Appeals for the Seventh Circuit has addressed the particular question raised by defendant's motion, the Court of Appeals for the Fourth Circuit has rejected the view that a plaintiff does not have standing to challenge a discriminatory tax exemption until she makes an unsuccessful attempt to claim the exemption. In Finlator v. Powers, 902 F.2d 1158 (4th Cir. 1990), the court stated, "[w]e do not believe that this additional requirement would improve the vigorousness or quality of the parties' advocacy, would enhance the posture of this case, would clarify the legal issues presented for review, would strengthen the justiciability of the appellants' claims, or would contribute in any way to our ability to decide a question presented and contested by parties having a demonstrated interest and stake in its resolution." Id. at 11-62. The court reaffirmed this view in Planned Parenthood of South Carolina Inc. v. Rose, 361 F.3d 786, 791-92 (4th Cir. 2004), in which it concluded that plaintiffs objecting to a "Choose Life" license plate did not have to request a pro-choice license plate to obtain standing because the statute at issue made it clear that they would not be able to obtain one. See also Budlong v. Graham, 414 F. Supp. 2d 1222, 1227 (N.D. Ga. 2006) (plaintiffs had standing to challenge tax exemption; they were "forced to endure a tax because the literature they seek to purchase and sell does not meet state-imposed religion and content requirements");

11

Flamer v. City of White Plains, New York, 841 F. Supp. 1365, 1372 (S.D.N.Y. 1993) (plaintiff had standing to challenge resolution banning religious displays on public property even though he had not submitted personal request to erect display).

Defendant suggests that Finlator is no longer good law in light of Winn, but its argument is not persuasive. The question in Winn was whether taxpayers had standing to challenge a state statute granting a tax credit to individuals who made a contribution to a "student tuition organization." The plaintiffs were not arguing that they were unable to qualify for the credit or that the credit itself was discriminatory. Id. at 1447 ("Respondents are likewise able to contribute to an STO of their choice, either religious or secular. And respondents also have the option of contributing to other charitable organizations, in which case respondents may become eligible for a tax deduction or a different tax credit."). Rather, their argument was that they were injured because other taxpayers had the option of making a contribution to a religious student tuition organization, which meant that the credit had the effect of "us[ing] State income-tax revenues to pay tuition for students at religious schools." Id. at 1441. In other words, the plaintiffs were objecting to the government's use of their tax dollars. Because plaintiffs are not claiming taxpayer standing in this case, Winn is not instructive.

The only contrary case defendant cites is Apache Bend Apartments, Ltd. v. United States through IRS, 987 F.2d 1174 (5th Cir. 1993), a case in which the plaintiffs were challenging the constitutionality of the transition rules of the Tax Reform Act of 1986, which gave specified exemptions to a small number of taxpayers. In a split decision the

majority held that "prudential concerns convince us that the plaintiffs have not alleged an injury that is appropriate for judicial resolution." Id. at 1177. Although defendant's reliance on this case is limited to a string citation, I will address the majority's reasoning because it is the only similar case that supports defendant's position and many of defendant's and the majority's arguments overlap.

The majority identified a number of reasons for its decision: (1) "the injury of inequality alleged by the plaintiffs essentially is nothing more than a claim to 'an asserted right to have the Government act in accordance with law,'" id. at 1179 (citing Allen v. Wright, 468 U.S. 737, 754 (1984)); (2) only a small number of taxpayers could claim the tax exemption at issue, so the plaintiffs had a "generalized grievance . . . that they share with all taxpayers," id. at 1178; (3) if the court "accept[ed] the plaintiffs' claim of standing [as sufficient] in this case, there would be no principled basis upon which to deny standing to any taxpayer wishing to challenge any of the countless provisions of the federal tax laws which treat some taxpayers more favorably than others," id. at 1180; (4) "Congress has erected a complex structure to govern the administration and enforcement of the tax laws, and has established precise standards and procedures for judicial review of tax matters," id. at 1177; and (5) "the relief the plaintiffs seek, if granted, would seriously disrupt the entire revenue collection process." Id.

I have already addressed the first reason: plaintiffs' allegation of discriminatory treatment is distinct from a simple disagreement with the government's conduct. In none of the cases cited by the court in Apache Bend or by defendants did the plaintiffs identify

13

as their injury the denial of a benefit provided to a similarly situated third party. E.g., Whitmore v. Arkansas, 495 U.S. 149, 160 (1990) (injury was "the public interest protections of the Eighth Amendment"); Richardson, 418 U.S. at 176-77 (rejecting claim of taxpayer standing); Ex parte Levitt, 302 U.S. 633, 634 (1937) (injury was disagreement with Justice Black's appointment to Supreme Court); Hein v. Freedom from Religion Foundation, Inc., 551 U.S. 587 (2007) (rejecting claim of taxpayer standing); Freedom from Religion Foundation, Inc. v. Obama, 641 F.3d 803 (7th Cir. 2011) (injury was "offense at the behavior of the government").

The strongest objection is the second, which is that plaintiffs' injury is simply a "generalized grievance" because it is widely shared with other taxpayers. Defendant repeats this argument in its briefs. Like the dissenting judges in Apache Bend, plaintiffs argue that the denial of a tax benefit is not a generalized grievance because their injury is shared only by others who are similarly situated, which plaintiffs identify in this case as employees who are provided a home or a housing allowance as part of their compensation for their employment. Apache Bend, 987 F.2d at 1182 (Goldberg, C.J., dissenting) ("class of aggrieved taxpayers is limited to those taxpayers who are similarly situated to the taxpayers who are treated more favorably"). This would be one way to limit the class of plaintiffs with standing, though it is not clear whether it is consistent with Supreme Court precedent because it suggests that a plaintiff does not have standing unless she can show that she would be successful in obtaining the benefit in the absence of the challenged provision. E.g., Northeastern Florida Chapter of Associated General Contractors of America v. City of

14

Jacksonville, Florida, 508 U.S. 656, 665-66 (1993) ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.").

Regardless whether standing is limited as plaintiffs suggest, I disagree with defendant that plaintiffs lack standing because they have a "generalized grievance." The Supreme Court has rejected the view that a plaintiff does not suffer an injury in fact simply because it is "widely shared." Massachusetts v. EPA, 549 U.S. 497, 522 (2007) ("That these climate-change risks are 'widely shared' does not minimize Massachusetts' interest in the outcome of this litigation"); Federal Election Commission v. Akins, 524 U.S. 11, 24 (1998) ("[W]here a harm is concrete, though widely shared, the Court has found 'injury in fact' "). Rather, the question is whether plaintiffs' injury is sufficiently "concrete." As noted above, the parties agree that the denial of a tax benefit meets that standard. Further, requiring taxpayers to seek a refund would not limit the potential class of people who would have standing to sue; it would simply put an arbitrary barrier in their way. To the extent that a large number of taxpayers have standing to challenge § 107, that is due less to the nature of the injury and more to the small number of people that receive the tax benefit. Under defendant's view, if the government gave a tax exemption limited to Caucasians of Norwegian descent, taxpayers with other ancestries could not challenge the exemption simply because they greatly outnumber the favored group.

The third objection is related to the second: the majority noted that the tax code contains many exemptions for many different groups of people, so it would cause judicial

15

chaos to allow disfavored groups to sue to challenge those exemptions.   However, simply

because a person has standing to sue does not mean that his lawsuit is likely to follow.  It is

well established that any conceivable rational basis is enough to justify most government

classifications,  Nordlinger v. Hahn, 505 U.S. 1, 15 (1992), so the vast majority of lawsuits

challenging allegedly discriminatory tax exemptions would be frivolous on their face.  Many

people may have standing to challenge a wide variety of laws affecting a large number of

people, such as traffic regulations or state insurance requirements, but challenges to such

laws are few and far between, presumably because the government's authority to enact them

is clear.

The fourth objection, that allowing plaintiffs to sue would "disrupt" the operation of

the government, seems to be misguided.  First, the case cited for this proposition, Louisiana

v. McAdoo, 234 U.S. 627 (1914), was about sovereign immunity; it had nothing to do with

standing.  Second, if plaintiffs prevailed on their claims, it would not place any additional

burdens on the government; it would eliminate a tax exemption.  Thus, the primary effect

would be to increase the funds retained by the federal government.  Budlong, 414 F. Supp.

2d at  1227 ("Were it to enjoin the enforcement of such tax exemptions, this Court would

actually enrich the State of Georgia's coffers, not deplete them.").

The fifth objection is that Congress has enacted a number of procedures for

challenging provisions of the tax code.  Again, that is not an objection to standing.  More

important, defendant cites no statute that prohibits plaintiffs from bringing this action.  As

defendant acknowledges, the Anti-Injunction Act, 26 U.S.C. § 7421, bars suits that seek to

enjoin the government from assessing or collecting a tax, not from eliminating an exemption, so it does not apply to this case. Cf. Hibbs v. Winn, 542 U.S. 88, 107-08 (2004) (challenge to state tax exemption not barred by Tax Injunction Act, which is state corollary to Anti-Injunction Act). Defendant suggests that the Declaratory Judgment Act may be read as forbidding all lawsuits related to taxes, but it acknowledges that the Court of Appeals for the Seventh Circuit has interpreted that act as being coextensive with the Anti-Injunction Act. Tomlinson v. Smith, 128 F.2d 808, 811 (7th Cir. 1942).

It is true that the tax code provides particular mechanisms for challenging deficiencies and seeking refunds, but neither the majority in Apache Bend Beedn nor defendant cited any authority for the proposition that a court may refuse to exercise jurisdiction over a claim because Congress has limited federal jurisdiction over a *different* claim. Although there may be good reasons for requiring litigation related to any tax statute to be brought in tax court, that does not mean that courts may limit their own jurisdiction when Congress declined to do so. Rather, the general rule is that federal courts must exercise jurisdiction over cases arising under federal law unless it is unmistakably clear that Congress intended to withdraw that jurisdiction. Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740, 748-49 (2012) (when "the claim arises under federal law, . . . federal-question jurisdiction under § 1331 . . . endures unless Congress divests federal courts of their § 1331 adjudicatory authority").

Finally, although neither side raises this issue, one might argue that plaintiffs do not have standing to challenge their alleged unequal treatment unless they allege that in fact they would claim the exemption in the absence of the "minister of the gospel" limitation. Cf.

17

Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 182-83 (2000) (plaintiffs had standing to challenge defendant's discharge of pollutants into river by alleging that they would use river but for defendant's conduct); Babbitt v. United Farm Workers National Union, 442 U.S. 289 (1979) (plaintiff challenging statute before enforcement establishes standing by "alleg[ing] an intention to engage in a course of conduct . . . proscribed by a statute").  Plaintiffs do not allege explicitly that they would apply for the exemption if they qualified for it, but I may reasonably infer at this stage that they would from their allegations that plaintiff Barker claimed the exemption in the past when he was a minister and that the remaining individual defendants believe they would qualify but for the religious limitation.  E.g., Ord v. District of Columbia, 587 F.3d 1136, 1143 (D.C. Cir. 2009) (inferring intent to engage in conduct from allegation that plaintiff had engaged in conduct in past but cannot do so now because of restriction).  However, at summary judgment, plaintiffs may need to come forward with more specific evidence on this point.

B.  Redressability

With respect to the other requirements of standing, there does not seem to be any genuine dispute that plaintiffs' injury may be traced to § 107 and defendant's implementation of it and that plaintiffs' injury could be redressed by invalidating § 107.  In its opening brief, defendant argued that plaintiffs' alleged injury was not redressable because they cannot obtain a refund in this lawsuit or an injunction stopping the government from collecting a tax.  However, in its reply brief, defendant acknowledges that nullifying § 107

would be an appropriate remedy. This is consistent with several cases in which the Supreme Court has held that the government's denial of a benefit to the plaintiff does not have to be redressed by awarding the benefit to the plaintiff; rather, the injury may be redressed by eliminating preferential treatment to others. Heckler v. Mathews, 465 U.S. 728, 740, (1984) ("We have often recognized that the victims of a discriminatory government program may be remedied by an end to preferential treatment for others."). Accord Texas Monthly, 489 U.S. at 7-8; Orr v. Orr, 440 U.S. 268, 271-72 (1979).

### C. Sovereign Immunity

At the end of its brief in chief, defendant argues that plaintiffs' claims are barred by sovereign immunity, but it does not deny that 5 U.S.C. § 702 waives immunity for claims seeking prospective relief. Rather, its immunity argument is that plaintiffs cannot bring a claim under § 702 because they lack standing to sue. Because I have rejected defendant's standing argument, its sovereign immunity argument necessarily fails as well.

### ORDER

IT IS ORDERED that

1. Defendant United States of America's motion to dismiss, dkt. #16, is DENIED.

2. The motion to amend the caption of the complaint filed by plaintiffs Freedom from Religion Foundation, Inc., Annie Laurie Gaylor, Anne Nicol Gaylor and Dan Barker, dkt. #26, is GRANTED. The caption is AMENDED to include Timothy Geithner and

Douglas Shulman in their official capacities.

    3. Because the deadlines in this case have been stayed pending this order, the clerk of court is directed to set up a new scheduling conference with the magistrate judge.

    Entered this 29th day of August, 2012.

                                           BY THE COURT:
                                           /s/
                                           BARBARA B. CRABB
                                           District Judge