IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

FREEDOM FROM RELIGION      )
FOUNDATION, INC.,             )
ANNIE LAURIE GAYLOR, and      )
DAN BARKER,               )     Case No. 11-cv-0626
                             )
Plaintiffs,                 )
                             )
v.                         )
                             )
UNITED STATES OF AMERICA,     )
                             )
Defendant.                 )
_____)

## UNITED STATES' REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiffs ask this Court to declare 26 U.S.C. § 107[1] unconstitutional and enjoin the

United States from enforcing it. They rest on mere allegations, improper disputations of the

United States' proposed findings of facts, and immaterial facts in support of their claims that

§ 107 and the manner in which the Treasury Department and the IRS administer it violate the

Establishment Clause of the First Amendment and the Due Process Clause of the United States

Constitution. However, the undisputed facts show that Plaintiffs have not met their burden of

establishing the Court's subject-matter jurisdiction over this case. Plaintiffs do not even dispute

the United States' facts or legal arguments showing that their claims are not ripe and the United

States has not waived sovereign immunity. Plaintiffs have also not shown that they have Article

III standing to sue on their claims.

---

[1] All statutory references refer to the Internal Revenue Code (26 U.S.C.), unless
otherwise noted.

In any event, § 107 is constitutional. Plaintiffs have not shown that it is *un*constitutional, let alone in every set of circumstances. They have not even shown a triable issue of fact on the issue. Instead, the United States has shown that the statue meets the three-prong *Lemon* test: it has a secular purpose; its primary effect does not advance religion; and it does not foster excessive entanglement with religion. Under FED. R. CIV. P. 56 and the substantive law governing their claims, summary judgment should be entered for the United States on all claims.

## I.     Legal Standard

The United States has met the legal standard for obtaining summary judgment in its favor on all claims in this case: there is no genuine dispute as to any material fact under the governing law, *see* FED. R. CIV. P. 56(a), which law entitles the government to a decision in its favor. Plaintiffs offer additional facts regarding their standing to sue, but none of these facts affect the legal analysis of the standing issue; therefore, they are not "material" to the case. *See Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (observing that a factual dispute is material only if its "resolution might change the suit's outcome under the governing law"); *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009) ("[A] factual dispute is 'genuine' only if a reasonable jury could find for either party.").

Plaintiffs do not properly dispute the United States' proposed findings of fact on the constitutionality of § 107. (*See generally* U.S.'s Resp. to Pls' Add'l Prop. Findings of Fact, filed herewith; U.S.'s Reply to Pls' Resp. to the U.S.'s Stmt. of Prop. Findings of Fact; Doc. 10, "Procedure to be Followed on Motions for Summary Judgment" ("Procedure"), ¶ II.D.2; *id.* "Helpful Tips for Filing a Summary Judgment Motion in Cases Assigned to Judge Barbara B. Crabb," ¶ 3); *e.g.*, *Hedrich v. Bd. of Regents of the Univ. of Wis. Sys.*, 274 F.3d 1174, 1177-78 (7th Cir. 2001) (rejecting the abuse-of-discretion challenge to this Court's decision to disregard proposed statements of fact not in compliance with its Procedure); *Smith v. Delvaux*, 2010 U.S.

Dist. LEXIS 15533, at *1-2 (W.D. Wis. Feb. 19, 2010) (Crabb, J.) ("Because [*pro se*] plaintiff has submitted no [evidence] to support his allegations in opposition to defendant's proposed findings of fact, defendant's facts must be accepted as true."); *Ruppert v. Alliant Energy Cash Balance Pension Plan*, 716 F. Supp. 2d 801, 808 (W.D. Wis. 2010) (Crabb, J.), *motion for reconsideration granted on other grounds by* 2010 U.S. Dist. LEXIS 60872 (W.D. Wis. Jun. 18, 2010) (disregarding "arguments and characterizations" contained in parties' proposed findings of fact on summary judgment; in part because "[w]hen a party wants to make an argument about the meaning of facts, or about the law, those words should be saved for the briefs"); *see also* FED. R. CIV. P. 56(c)(1) (requiring that a non-moving party use particular materials to dispute a factual assertion). Thus, the vast majority of the United States' proposed findings of fact supporting its arguments regarding the constitutional soundness of § 107 are undisputed; those that are disputed are immaterial.

Although Plaintiffs never mention the legal standard that applies to their claims in this case, they ask this Court to deny judgment for the United States "and instead grant judgment in favor of Plaintiffs." (Doc. 52 at 66.) This facile request comes with no evident awareness of the burden that Plaintiffs hold to prove their facial challenge to the constitutionality of § 107: in their opposition brief, Plaintiffs had to "establish that *no set of circumstances exists* under which [§ 107] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987) (emphasis added); *accord Doe v. Heck*, 327 F.3d 492, 528 (7th Cir. 2003). Even to survive summary judgment, Plaintiffs had to show a genuine dispute of material fact as to whether "no set of circumstances exists under which [§ 107] would be valid." *Salerno*, 481 U.S. at 745. Plaintiffs did not meet this burden to survive summary judgment, or even acknowledge it. (*See generally* Doc. 52.)

Nor did Plaintiffs acknowledge the canons of constitutional construction applicable here, including that "'every reasonable construction must be resorted to, in order to save a statute from unconstitutionality,'" *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2594 (2012) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)), and the Court has a "plain duty" to adopt a constitutional interpretation of a statute, even when an unconstitutional interpretation is proffered, *id.* at 2593; *Blodgett v. Holden*, 275 U.S. 142, 148 (1927) (Holmes, J., concurring). Because the United States has offered an interpretation of § 107 that is consistent with the United States Constitution, and supported that interpretation with undisputed facts, summary judgment should be granted for the United States.

## II.   Argument

### A.   This Court lacks subject matter jurisdiction over Plaintiffs' claims for relief.

The question of whether a court has subject matter jurisdiction over claims before it is always an appropriate consideration. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94-95 (1998) (Article III requires a federal court to satisfy itself of its subject-matter jurisdiction before it considers the merits of a case). Here, the undisputed material facts inform the question of subject matter jurisdiction in a different way than it could be considered at the motion to dismiss stage. (*See generally* Doc. 44 at 5-24.) Plaintiffs dispute the arguments made by the United States with respect to their lack of Article III standing,[2] specifically the requirements of injury-in-fact and traceability.[3] *See Friends of the Earth, Inc. v. Laidlaw Envtl. Serv*, 528 U.S.

---

[2] Plaintiffs offer no counter to the United States' arguments regarding ripeness or waiver of sovereign immunity. (*See* Doc. 44 at 22-25.)

[3] The United States does not dispute that in a properly presented constitutional challenge, nullification of a statute is an available remedy. Here, however, Plaintiffs cannot show facts to support their alleged injury that is fairly traceable to challenged action by the United States as a result of § 107 or the way in which it is administered.

167, 180-81 (2000); *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012). Plaintiffs bear the burden of proving that they meet both elements, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), but the undisputed facts show that they have failed to meet that burden.

### 1.   Plaintiffs do not purport to have standing to raise a constitutional challenge to § 107(1).

Plaintiffs admit that they have not received or claimed any tax benefit in connection with either § 107(1) or § 107(2). Indeed, Plaintiffs make no argument that they have standing to challenge the constitutionality of § 107(1). Nor could they; Ms. Gaylor and Mr. Barker do not receive housing or other lodging provided to them in-kind by their employer and do not allege that they are otherwise similarly situated to ministers who do qualify for § 107(1). As a result, there is no genuine dispute that Plaintiffs' challenge to the constitutionality of § 107(1) must fail.

### 2.   Plaintiffs do not have standing to raise a constitutional challenge to § 107(2).

Plaintiffs have not suffered, and are not imminently in danger of suffering, an injury-in-fact that is traceable to discriminatory action by the United States. Ms. Gaylor and Mr. Barker allege that they will suffer some unequal treatment or "discrimination" on the basis of religious criteria if they attempt to claim an exclusion under § 107(2). (*See* Doc. 13 ¶ 41.) This Court allowed Plaintiffs to proceed with a "pre-enforcement challenge" because (at the motion to dismiss stage) "there [was] no suggestion that [§ 107] is susceptible to an interpretation that would remove the need for resolving the constitutional questions raised." (*See* Doc. 30 at 8 (quoting *California Med. Ass'n v. Fed. Election Comm'n*, 453 U.S. 182, 192 n.14 (1981)). But, as the United States has now shown and Plaintiffs have failed to rebut, this Court is not presented with a situation where Plaintiffs intend to take a course of conduct that implicates the constitutionality of § 107. Rather, § 107 "is susceptible to an interpretation that would remove

the need for resolving the constitutional questions raised," *id.*, and this pre-enforcement challenge does not present the need to address, let alone resolve, any constitutional question.

Under the governing law, *an* atheist who performs tasks like those performed by a "minister of the gospel" may lawfully submit a claim for the § 107 exclusion because the law treats atheism as a religion in at least the specialized legal sense where equal treatment of religious beliefs (or lack thereof) is concerned. *See Kaufman v. McCaughtry*, 419 F.3d 678, 681-82 (7th Cir. 2005); *see also Torcaso v. Watkins*, 367 U.S. 488, 495 n.11 (1961); (Doc. 44 at 10-21). That is because the term "minister of the gospel" is used in the Internal Revenue Code to refer to an occupation rather than to take a position on any ultimate questions. Plaintiffs are content to brush this law aside as a "limited premise," (Doc. 52 at 13), while proposing 48 additional findings of fact (Doc. 50), nearly all of which appear intended to contradict the United States' proffered facts on the issue of their alleged injury of discrimination on the basis of "religious criteria." (*See also* Doc. 52 at 4-12; Doc. 13 ¶¶ 50, 52.) But none of these facts are material to the issue under the governing substantive law because it does not matter whether Ms. Gaylor or Mr. Barker would or would not be eligible for the exclusion provided in § 107 if they claimed it. What matters is that *an* atheist may lawfully make a claim for the exclusion.

The IRS has incorporated a position consistent with governing law into its guidance on how it addresses issues involving religion or religious entities. (Doc. 41 ¶¶ 136-142.) For example, the IRS recognizes that "religious beliefs include many beliefs (for example, Taoism, Buddhism, and Secular Humanism) that do not posit the existence of a Supreme Being in the conventional sense." (*Id.* ¶ 138 (quoting Ex. 38, Internal Revenue Manual ("IRM") § 7.25.3.6.5(2)).) The IRS will not "consider the content or sources of a doctrine which is alleged to constitute a particular religion," and will "make no attempt to evaluate the content of whatever

6

doctrine a particular organization claims is religious." (*Id.* ¶ 140 (quoting Ex. 37, IRM § 4.76.7.14(1)).) In light of this recognition of binding precedent on the issue of what may be treated as a religion, this Court has no reason to conclude that the IRS would ignore *Kaufman* in its application of § 107 to an atheist.

### a.   Because § 107(2) is susceptible to a constitutional interpretation, Plaintiffs have not shown that they have suffered, or will imminently suffer, an injury-in-fact.

Section 107 addresses the particular housing needs of people with an occupation of "minister" (which term the IRS recognizes is "not used by all faiths" (*Id.* ¶ 115)), regardless of religion or lack thereof as required by *Kaufman*. The only qualifications to be considered to be performing ministerial duties under § 107 are that the individual "performs the types of duties that could be termed ministerial," *Warnke v. United States*, 641 F. Supp. 1083, 1085 (E.D. Ky. 1986), which are functions equivalent to those identified in 26 C.F.R.[4] § 1.1402(c)-5(b)(2). *See Knight v. Comm'r*, 92 T.C. 199 (1989); *Wingo v. Comm'r*, 89 T.C. 922 (1987). Under Plaintiffs' facial and context-less challenge, Plaintiffs can show no *facts* to support their allegation that the United States administers § 107 in a religiously discriminatory manner, such that they have suffered (or will imminently suffer) an injury-in-fact at the hands of the United States were they to attempt to claim the exclusion in § 107. Instead, undisputed facts regarding some of Ms. Gaylor and Mr. Barker's own employment duties provide examples of the kinds of things that *an* atheist could do in the course of her employment that could qualify as ministerial duties for the § 107 exclusion. (Doc. 44 at 10-12, 17-21.)

---

[4] All regulatory references refer to the Code of Federal Regulations, Title 26 – Internal Revenue (26 C.F.R.), unless otherwise noted.

Plaintiffs' arguments to the contrary are unavailing. For example, they claim that the United States argues that FFRF must be susceptible to classification as a religious organization in order for it to commission, license or ordain Ms. Gaylor or Mr. Barker, so that they might be eligible for status as a minister. (Doc. 52 at 16-18.) But that is not the United States' argument. In fact, nothing is stopping an atheist organization from creating a kind of non-religious commission, license, or ordination for its leaders. Indeed, "the ministerial duties which qualify a minister for the allowance exclusion is very broad, thereby including most practicing ministers. . . . The ministerial duties listed in Section 1.107-1(a) merely exemplify the types of duties that qualify a minister to be deemed a 'minister of the gospel.'" *Warnke*, 641 F. Supp. at 1088. Plaintiffs have introduced no facts to suggest that the IRS will apply terms like "minister" and "religious organization" as if they turn on adherence to some theistic belief or other content. *Accord Seward v. United States*, 515 F. Supp. 505, 508 (D. Md. 1981) ("None of these regulations would preclude a qualifying Universal Life Church minister," which has "little in the way of religious dogma," "from obtaining an exemption for ministerial service income.").

Further, the fact that an individual is not employed by a religious organization does not preclude that person from qualifying as a minister for purposes of § 107. *See Libman v. Comm'r*, T.C. Memo 1982-377, at *2, 7 n.3; § 1.1402(c)-5(b)(2)(iii). Rather, the criteria for whether or not a person is performing service in the exercise of his or her ministry specifically provides that where "a minister is performing service in the conduct of religious worship or the ministration of sacerdotal functions, such service is in the exercise of his ministry whether or not it is performed for a religious organization." § 1.1402(c)-5(b)(2)(iii). This provision is stated disjunctively, and is illustrated by an example where a minister performs services that include counseling students and teaching classes. *Id*. Thus, there is no requirement that an individual be employed by a

religious organization to qualify as a minister for purposes of § 107. Even if there were such a requirement, an organization need not be theistic to qualify as a religious organization. *Cf. Torcaso*, 367 U.S. at 495 n.11 ("Among religions in this country which do not teach what would generally be considered a belief in the existence of God are Buddhism, Taoism, Ethical Culture, Secular Humanism and others."); (*see also* Doc. 41 ¶¶ 107, 115-117, 129-133, 136-138, 140-42).

Moreover, Plaintiffs make unsupported assertions regarding the nature of atheism in an attempt to show that an atheist could not qualify for the exclusion in § 107. As an initial matter, Plaintiffs' assertions regarding atheism, generally, are not facts here and must be disregarded at the summary judgment stage. Plaintiffs have not been proffered as expert witnesses on the beliefs, history, traditions, or practices among atheists or other non-theists. *See* FED. R. EVID. 601, 701-04; FED. R. CIV. P. 26(a)(2)(B) (requiring specific disclosures for any witness to be proffered as a testifying expert). The United States does not dispute that Ms. Gaylor or Mr. Barker may believe the assertions they make about atheism. But Plaintiffs offer no admissible evidence as to the precepts of "atheism" or the beliefs of atheists generally. They offer no evidence that *an* atheist could not meet the requirements to qualify for the exclusion under § 107.

Similarly, Plaintiffs' personal beliefs about atheism cannot be considered "tenets" of atheism generally. (*See* Doc. 52 at 7.) The most basic definition of "tenet" is that it is "a principle, belief, or doctrine generally held to be true; *especially*: one held in common by members of an organization, movement, or profession." Tenet, MERRIAM-WEBSTER DICTIONARY (2013) (available at http://www.merriam-webster.com/dictionary/tenet). Both atheism and non-theism are organized around principles or beliefs regarding what is true, s*ee Kaufman*, 419 F.3d at 681-82; *Torcaso*, 367 U.S. at 495 n.11, regardless of what Plaintiffs allege about what "atheism" or "non-theism" means to them. For these reasons, the law treats atheism as a

9

"religion" in at least the specialized legal sense where equal treatment of religious beliefs (or lack thereof) is concerned. *See Kaufman*, 419 F.3d at 681-82; *see also Torcaso*, 367 U.S. at 495 n.11.

Even accepting as true Plaintiffs' unsupported assertion that atheism is not formal and non-hierarchical, ministers of such religions may qualify for an exemption pursuant to § 107. *See Tanenbaum v. Comm'r*, 58 T.C. 1, 8 (1972); *Libman*, T.C. Memo 1982-377, *2 & n.3; *Colbert v. Comm'r*, 61 T.C. 449, 455 (1974) (acknowledging "that there is no formal statement of precepts which are binding on the Baptist churches," but holding that "tenets and practices" can be interpreted to "include[] those principles which are generally accepted as beliefs and practices within the Baptist denomination"). A "minister" under § 107 is not required to work in a formal or hierarchical denomination. Instead, the tenets of and practices of the "religious body" constituting the individual's "church or church denomination" determine whether the service performed by a minister constitutes the conduct of religious worship or the ministration of sacerdotal functions, and "hierarchy" does not enter the analysis.

Indeed, Ms. Gaylor's and Mr. Barker's actions show that an individual who subscribes to non-theism or atheism or even a specifically anti-religious set of beliefs concerning ultimate issues could perform kinds of sacerdotal functions as part of their employment. For example, an individual whose employment responsibilities include the administration of secular rites and rituals, such as weddings, funerals, etc., may be performing "sacerdotal functions," as that term is defined and applied. *See Libman*, T.C. Memo 1982-377 (holding that minister performed sacerdotal functions, which included counseling, conducting weddings, funerals, and study sessions, communicating beliefs, and directing religious services). Plaintiffs fail to distinguish the duties they perform in furtherance of non-theism or atheism from the duties performed by a

10

minister. *Compare id. with* (Doc. 52 at 11-12 (admitting that Mr. Barker officiates weddings and not denying that Mr. Barker composes and performs songs regarding his beliefs, counsels individuals on issues of ultimate concern, goes on speaking tours to individuals for the purpose of discussing his beliefs, and considers himself a "'preacher' for atheism and agnosticism")); (Doc. 41 ¶¶ 6-8).

Section 107 is susceptible to an interpretation that renders it consistent with the United States Constitution. Plaintiffs have not shown facts that they have suffered or will suffer an imminent or ongoing injury-in-fact that would adequately support standing for a pre-enforcement challenge. *See L.A. v. Lyons*, 461 U.S. 95, 105 (1983) (standing to seek injunction depends on likelihood of future injury); *Aslin v. Fin. Indus. Regulatory Auth., Inc.*, 704 F.3d 475, 480 (7th Cir. 2013) (past injury insufficient for standing to seek declaratory judgment or injunction, and the injury must be personal to this plaintiff, not simply someone in the future). As a result, Plaintiffs' challenge to § 107 is inherently hypothetical and speculative, and does not provide a reliable context from which to determine whether or not § 107 complies with the Constitution. Indeed, an individual could qualify for an exemption under § 107 irrespective of the nature of their beliefs (or lack thereof).

### b. Plaintiffs' prospective injury is not fairly traceable to discrimination on the basis of religion.

Ms. Gaylor's and Mr. Barker's failure to obtain an exemption under § 107 is not traceable to religious discrimination by the United States. They have not claimed and been denied the exemption based on their beliefs, or even communicated with the IRS on the topic of whether § 107 should reach non-religious individuals who perform responsibilities analogous to traditional ministers. Therefore the traceability of their alleged "injury" starts and stops with them.

Even assuming that Plaintiffs themselves would not qualify as ministers, their alleged

"injury" would still not be traceable to religious discrimination by the United States. Plaintiffs

claim (contrary to numerous admissions that they made in discovery (*see* U.S.'s Reply to Pls'

Resp. to the U.S.'s Stmt. of Prop. Findings of Fact, filed herewith, ¶¶ 1-16)) that they are not

performing the kinds of functions performed by ministers, even though the United States has

explained that some of these duties could be legally described as sacerdotal functions and thus

duties of a minister. Plaintiffs' failure to qualify as ministers for purposes of § 107 would only

implicate the simple statutory question of whether these Plaintiffs would meet their burden to

claim the exemption.[5] They claim they would not. As a result, Plaintiffs cannot maintain a pre-

enforcement challenge because § 107 "is susceptible to an interpretation that would remove the

need for resolving the constitutional questions raised." *California Med. Ass'n*, 453 U.S. at 192 n.

14. Indeed, the operation of § 107 as to an atheist or non-theist taxpayer seeking federal income

tax status as a "minister" "hinges on a highly attenuated claim of speculative future events or

unknowable details about the manner in which" § 107 would be enforced. *See American Civil*

*Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 593-94 (7th Cir. 2012).

Plaintiffs have not established that their prospective denial of an exemption under § 107

is fairly traceable to their religious affiliation or lack thereof. Rather, Ms. Gaylor and Mr. Barker

---

[5] Because tax exemptions are matters of legislative grace, they must be claimed by the taxpayer as a prerequisite of obtaining those benefits. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). The burden is on the taxpayer to prove that he or she is entitled to the exemption, *Templeton v. Comm'r*, 719 F.2d 1408, 1410-11 (7th Cir. 1983), and so here the Court is only presented with the question of whether Ms. Gaylor or Mr. Barker have carried their burden to prove their entitlement to an exemption, not whether the IRS would discriminate against them. Rather, the Court should assume that the IRS would take the more conservative position that Ms. Gaylor and Mr. Barker have not sufficiently substantiated their claims before reaching any constitutional questions. (*See* Doc. 41 ¶¶ 125-126, 133-135, 139); *Blodgett*, 275 U.S. at 148 (Holmes, J., concurring) (a court should opt for an interpretation consistent with the Constitution "[e]ven to avoid a serious doubt" about the constitutionality of a statute).

can only trace their injury to not falling within objective, non-discriminatory criteria under § 107. Plaintiffs' naked assertion to the contrary, that they are "similarly situated" to ministers (Doc. 52 at 1, 28), does not change that conclusion. Otherwise, Plaintiffs would have standing to challenge any form of differential treatment provided in the tax code to any individual for any reason. There are numerous such provisions providing specific treatment depending on an individual's occupation or employment responsibilities. *E.g.*, 26 U.S.C. §§ 86 (railroad retirees), 112(d) (prisoners of war), 134 (basic area allowance), 152(f)(2) (students), 1402 (certain employees deemed self-employed), 1402(i) (commodity dealers), 1402(k) (former insurance salesmen), 3121(d)(3) (listing individuals who are statutory employees), 3121(o) (agricultural crew leaders), 3508(b)(1) (qualified real estate agents), 3508(b)(2) (direct sellers, including qualifying newspaper distributors and carriers), 3506 (qualifying companion sitters), 5801 (occupational taxes imposed on importers, manufacturers, and dealers of firearms), 5851 (occupational tax exemption to importers, manufacturers, and dealers of firearms who deal with the United States). That interpretation would totally undermine standing as a limitation on the judicial power.

Meanwhile, if Ms. Gaylor and/or Mr. Barker did decide to claim the exclusion in § 107, based on the duties they perform that are similar to "ministers" and based on *Kaufman*, their fear that they "would face an immediate and credible threat of penalty" in doing so (*e.g.*, Doc. 52 at 2), would be unfounded. As an initial matter, Plaintiffs do not identify what penalty they believe might apply. Assuming Plaintiffs refer to the penalty for frivolous tax submissions in § 6702, their belief is mistaken. That penalty only applies when a taxpayer files what purports to be a return in which the taxpayer takes "a position which the Secretary has identified as frivolous" or which "reflects a desire to delay or impede the administration of Federal tax laws." *See* § 6702(a). Examples of the kinds of positions that the Secretary has identified as frivolous are

13

that filing a federal tax return and/or paying federal taxes is voluntary, I.R.S. Notice 2010-33, 2010-1 C.B. 609, 2010-17 I.R.B. 609, at § III(1)(a), and that wages are not taxable income, *id.* § III(4). The positions identified by the Secretary are positions that have been repeatedly rejected by federal courts. *E.g.*, *Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990) (collecting arguments "completely lacking in legal merit and patently frivolous," which arguments include "the income tax is voluntary"); *Granzow v. Comm'r*, 739 F.2d 265, 267 (7th Cir. 1984) ("It is well settled that wages received by taxpayers constitute gross income within the meaning of . . . § 61(a), and that such gross income is subject to taxation."). Conversely, the argument that an individual may qualify as a minister for purposes of § 107 regardless of the content of their religious beliefs or lack thereof has not been identified as frivolous. *See generally* Notice 2010-33; *see also Coleman v. Comm'r*, 791 F.2d 68, 71 (7th Cir. 1986) (an argument "is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law") (citing *Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d 177 (7th Cir. 1985)).

Nor would such an argument necessarily "reflect a desire to delay or impede the administration of the Federal tax laws," if a taxpayer pays his or her tax liability in full and files a claim for refund in order to determine their qualification for an exemption. By the same token, Plaintiffs would not incur any other penalty (*e.g.*, an underpayment penalty) if they paid the full amount of their tax liabilities, and filed a claim for refund in the amount of the exclusion they sought to obtain pursuant to § 107. Thus, Plaintiffs' claim that they face penalties as a result of the operation of the challenged statute is simply incorrect. Plaintiffs might face penalties if they were to make a frivolous argument, but not as a result of the operation of § 107.

14

**3.   This Court should resolve the jurisdictional question before proceeding to the merits.**

For all of the foregoing reasons, Plaintiffs cannot show that they have Article III standing to challenge § 107. Thus, this Court should grant the United States' motion for summary judgment based on the absence of subject matter jurisdiction. This Court should not presume that the IRS would act inconsistently with the law regarding whether atheism is a religion for purposes of an atheist's claim under § 107 in order to proceed to the merits of Plaintiffs' claim. *Nat'l Fed'n of Indep. Bus.*, 132 S. Ct. at 2593-94; *Steel Co.*, 523 U.S. at 94; *Gomez v. United States*, 490 U. S. 858, 864 (1989) ("It is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question."); *Blodgett*, 275 U.S. at 148 (Holmes, J., concurring) (a court should opt for an interpretation consistent with the Constitution "[e]ven to avoid a serious doubt" about the constitutionality of a statute). To do so would presume the answer to a constitutional question in order to address it.

**B.   Plaintiffs have not shown a triable issue on the constitutionality of Section 107 and its implementing regulations.**

**1.   Plaintiffs do not contest that their equal protection claim should be evaluated under the Establishment Clause analysis.**

Plaintiffs do not contest the United States' argument that their claims should be evaluated under the Establishment Clause. Even when challenged under the Equal Protection Clause of the Fifth Amendment, the Establishment Clause analysis is the proper one to undertake first for a statute like § 107 that provides particular treatment "to all religions" and does not discriminate among them. *Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 338-39 (1987); *accord Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004); *Larson v. Valente*, 456 U.S. 228, 252 (1982); *see World Outreach Conf. Ctr. v. City of Chicago*,

591 F.3d 531, 534 (7th Cir. 2009); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (holding

that a plaintiff's "free-exercise claim arises under the First Amendment and gains nothing by

attracting additional constitutional labels" like equal protection); *Eulitt v. Me. Dep't of Educ.*,

386 F.3d 344, 354 (1st Cir. 2004). A statute that is consistent with the Establishment Clause then

receives only rational basis scrutiny in the equal protection analysis. *Locke*, 540 U.S. at 720 n.3;

*St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007).

> **2.   Plaintiffs have not shown a triable issue of fact as to whether § 107 is constitutional under the Establishment Clause analysis: it is.**

To evaluate a statute under the Establishment Clause, the "prevailing analytical tool" is

the *Lemon* test. *Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 849 (7th Cir. 2012), *petition for cert.*

*filed*, (U.S. Dec. 20, 2012) (No. 12-755) (quotation omitted). A statute like § 107 is consistent

with the Establishment Clause when (1) it has "a secular legislative purpose;" (2) the principal or

primary effect of the statute "neither advances nor inhibits religion;" and (3) the statute does "not

foster 'an excessive government entanglement with religion.'" *Lemon v. Kurtzman*, 403 U.S.

602, 612-13 (1971) (quoting *Walz v. Tax Com. of City of New York*, 397 U.S. 664, 674 (1970));

*Elmbrook Sch. Dist.*, 687 F.3d at 849. Evaluating the undisputed material facts in this case under

the *Lemon* test shows that, like other tax provisions that touch on religion, § 107 is consistent

with the Establishment Clause. *E.g.*, *Droz v. Comm'r*, 48 F.3d 1120, 1124-25 (9th Cir. 1995)

(applying the *Lemon* test, and upholding the constitutionality of § 1402(g) against an

Establishment Clause challenge); *Ballinger v. Comm'r*, 728 F.2d 1287, 1292-93 (10th Cir. 1984)

(rejecting Establishment Clause challenge to § 1402(e)); *Templeton v. Comm'r*, 719 F.2d 1408,

1412 n.5 (7th Cir. 1983) (rejecting a constitutional challenge to § 1402(g) for lack of standing,

but also noting that courts reaching the merits of that question had "uniformly held that this

section is not unconstitutional"). Plaintiffs simply ignore these analogous cases (instead relying

almost exclusively on *Texas Monthly v. Bullock*, 489 U.S. 1 (1989)), and do not provide any

legal analysis of the impact of these cases' holdings on the facts and legal principles implicated

by their challenge.

> **a. Plaintiffs have not shown a triable issue regarding the secular purpose of § 107: to eliminate discrimination between religious and secular employees, and among religious employees.**

A statute need not be "unrelated" to religion to pass the "secular purpose" prong of the

*Lemon* test. *Amos*, 483 U.S. at 335; *accord Texas Monthly*, 489 U.S. at 10 (plurality op. of

Brennan, Marshall, & Stevens, JJ.) (the Supreme Court has never required "that legislative

categories make no explicit reference to religion"). In fact, "[a] statute may be motivated in part

by a religious purpose and nonetheless satisfy the first criterion of *Lemon*" because the law also

serves a secular purpose. *Sherman v. Koch*, 623 F.3d 501, 507 (7th Cir. 2010). Courts evaluate

whether a statute has a secular purpose by looking to the "objective observer, one who takes

account of the traditional external signs that show up in the text, legislative history, and

implementation of the statute, or comparable official act." *McCreary County v. ACLU*, 545 U.S.

844, 862 (2005) (quotations omitted). A court may also look to the statute's "interpretation by a

responsible administrative agency, . . . the historical context of the statute, and the specific

sequence of events leading to passage of the statute." *Edwards v. Aguillard*, 482 U.S. 578, 594-

95 (1987) (internal citations omitted); *Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007,

1019-21, 1028 (9th Cir. 2010); *Katcoff v. Marsh*, 755 F.2d 223, 232-35 (2d Cir. 1985).

The United States offered the history of § 107 and its context in the Internal Revenue

Code, generally, to show its secular purpose: to eliminate discrimination between secular and

non-secular employees, and among employees of different religious groups. (*See generally* Doc.

44 at 27-40; *see also id.* at 12-21 (noting that an atheist is not precluded from qualifying as a

"minister of the gospel" for purposes of § 107).) These goals satisfy the secular purpose

requirement even under the logic of the plurality opinion in *Texas Monthly* because eliminating such discrimination lifts a government burden on the free exercise of religion and § 107 does not "burden[] nonbeneficiaries markedly," *see Texas Monthly*, 489 U.S. at 15 (citing *Amos*, 483 U.S. at 348 (O'Connor, J., concurring)), as the United States described in its opening brief (Doc. 44 at 27-30). Plaintiffs attempt to dispute the United States' proffered facts and legal arguments regarding the historical and administrative context for § 107 and the United States' treatment of *Texas Monthly*, but they fail to meet their burden of showing a genuine dispute of material fact on the issue of secular purpose. Therefore, the United States' proffered secular purpose for § 107 deserves deference. *See Sherman*, 623 F.3d at 508; *see also Nat'l Fed'n of Indep. Bus.*, 132 S. Ct. at 2594 ("every reasonable construction must be resorted to, in order to save a statute from unconstitutionality" (quotation omitted)).

Plaintiffs attempt to dispute the United States' proposed facts regarding the historical context for § 107 by stating that they "dispute" certain facts supported by the Declaration of James Hudnut-Beumler. (*E.g.*, Doc. 49 ¶ 39.) They do so without stating an adequate evidentiary objection and without providing alternative facts that might create some dispute. (*See* Procedure ¶ II.D.2); *e.g.*, *Smith*, 2010 U.S. Dist. LEXIS 15533, at *1-2. As a result, Plaintiffs' asserted "disputes" are conclusory and insufficient to actually create a disputed issue of fact requiring trial. *See* FED. R. CIV. P. 56(c); *Drake v. 3M*, 134 F.3d 878, 887 (7th Cir. 1998) ("[C]onclusory allegations . . . should be disregarded on summary judgment."). Therefore, the United States' proposed facts regarding the historical context for the current version of § 107 should be accepted as true.

Plaintiffs' only counter to the United States' undisputed facts regarding the historical context for the current version of § 107 is immaterial to the "secular purpose" question. A fact is

18

not "material" if it will not affect the outcome of a lawsuit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The immaterial "fact" that Plaintiffs offer to counter the proffered secular purpose of § 107 is a particular statement made on the House floor by Representative Peter Mack, which included comments such as "we are being threatened by a godless and anti-religious world movement" and that § 107(2) should be enacted for the benefit of "these people who are caring for spiritual welfare." (Doc. 52 at 52.) But *Lemon*'s secular purpose prong turns on *Congress's* legislative purpose in enacting the statute, not Rep. Mack's alleged purpose. *See Bd. of Educ. v. Mergens*, 496 U.S. 226, 249 (1990) (the secular purpose inquiry focuses solely on "the legislative purpose of the statute, not the possibly religious motives of the legislators who enacted the law") (plurality op.); *Newdow*, 597 F.3d at 1033; *see also United States v. O'Brien*, 391 U.S. 367, 384 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it . . . ."). Here, the "more authoritative" committee reports from the House of Representatives and the Senate, *see O'Brien*, 391 U.S. at 385, show Congress's purpose: the addition of § 107(2) was expressly intended to eliminate discrimination between ministers who received housing in-kind and those who received a cash housing allowance. *See* H.R. Rep. No. 1337, at 15 (1954); S. Rep. No. 1622, at 16 (1954). This purpose is in line with the history and evolution of the current version of § 107. (*See generally* Doc. 44 at 29-37.)

Turning to the context of § 107 within the larger Internal Revenue Code, Plaintiffs misconstrue the United States' position. The United States does not assert that § 107 is simply equivalent to § 119 and therefore it is constitutionally sound. Rather, § 107 is constitutionally sound because it is part of a comprehensive approach within the Code to acknowledge the reality that some employees are required to have certain housing by virtue of their employment or

location in the world, and that such housing costs should be excluded from their federally taxed income. (*See generally* Doc. 44 at 37-40.) The facts support the conclusion that Congress made the determination that housing or housing costs for such employees are provided "for the convenience of the employer" under §§ 107, 134, and 911. (*See id.* at 31-37 (describing evolution of the predecessor to § 107(1) along with the convenience of the employer doctrine)).

People whose housing is dictated by their work include secular employees, § 119; non-secular employees (which could include atheists (*see id.* at 8-21)), § 107; employees of the United States military and other agencies, §§ 134 and 911; and income-earning persons living abroad without respect to their occupation, § 912. A housing allowance is excludable from income by "ministers" under § 107, certain employees of the United States, §§ 134 and 911, and United States "citizens or residents" living abroad, § 912. The latter group need not even receive a "housing allowance" from an employer to exclude housing costs from income for federal income tax purposes. *See* § 912(c)(4)(A). Therefore, Plaintiffs miss the mark in arguing that the requirements for § 119 must apply to § 107.

### b. Plaintiffs have not shown a triable issue regarding the primary effect of § 107: it does not advance or inhibit religion.

To pass the second prong of the *Lemon* test, the principal or primary effect of the statute "must be one that neither advances nor inhibits religion." *Lemon*, 403 U.S. at 612-613; *Elmbrook Sch. Dist.*, 687 F.3d at 849. The "*government itself* [must] advance[] religion through its own activities and influence." *Amos*, 483 U.S. at 337 (emphasis in original). The government itself must be "endorsing" religion through a challenged activity. *Sherman*, 623 F.3d at 517. Courts have used the "reasonable person" test to evaluate what message the government is conveying. *Freedom from Religion Found. v. Hanover Sch. Dist.*, 626 F.3d 1, 11 (1st Cir. 2010); *Am. Atheists, Inc. v. Duncan*, 616 F.3d 1145, 1158-59 (10th Cir. 2010); *see also Elmbrook Sch. Dist.*,

687 F.3d at 850 (To evaluate the endorsement test in a religious display case "we must assess the totality of the circumstances surrounding the display to determine whether a reasonable person would believe that the display amounts to an endorsement of religion." (quotation and alteration omitted)).

The primary effect of § 107 is not to advance religion; instead, it is to provide an exclusion of employer-provided housing from income, like the exclusion provided to a variety of taxpayers under different provisions of the Internal Revenue Code, and to eliminate discrimination between ministers who received housing in-kind and those who received a cash housing allowance. *See supra* § II.B.2.a; (Doc. 44 at 27-40.) This primary effect is what the "reasonable person" would believe, in light of the totality of the circumstances surrounding the enactment and administration of § 107 (including the possibility for an atheist to qualify as a "minister of the gospel" for purposes of § 107). While Plaintiffs acknowledge that the endorsement test is objective (Doc. 52 at 64), they offer no *facts* to support their conclusion that "[t]ax breaks provided preferentially to ministers cannot help but be perceived as an endorsement of religion" (*id.*). The reasonable observer test does not take account of the subjective feelings of any particular litigants, *see Elmbrook Sch. Dist.*, 687 F.3d at 850; *Hanover Sch. Dist.*, 626 F.3d at 11, or else it would have no force. Instead, the only facts relevant to a determination are the same that apply to the "objective observer" used in the secular purpose prong, *supra* at § II.B.2.a.

Plaintiffs also offer conclusory arguments that a primary effect of § 107 is financial benefits for ministers and religious employers. The only fact in the record related to this topic is the Joint Committee on Taxation's Estimates of Federal Tax Expenditures for Fiscal Years 2009-2013. (Doc. 51-3.) The Joint Committee estimates that, in 2013, the amount of money excluded from federal income taxation due to ministers using § 107 will be approximately $800 million.

21

(*Id.* at 8.) But, as with many aspects of Plaintiffs' challenge to § 107 (*see* Doc. 44 at 28-30 and 37-40), a myopic focus on § 107 alone does not provide all of the necessary information about that number and what it means about § 107's effect on taxation of ministers overall. That is because a taxpayer who qualifies for an income tax exclusion under § 107 would also be solely responsible for paying self-employment tax (social security and Medicare tax imposed on self-employment income), rather than splitting the social security and Medicare tax burden with his or her employer as other employees do. § 1402(a)(8). The "minister's" self-employment tax would be imposed on any amount excluded from income as a housing allowance under § 107. *Id.* These factors possibly increase a "minister's" overall tax burden, or at least substantially reduce the tax savings from § 107. Plaintiffs do not even acknowledge this reality. Similarly, Plaintiffs ignore the amounts excluded under the other housing provisions of the Internal Revenue Code. (*See* Doc. 51-3 at 8 (line item "Exclusion of employee meals and lodging (other than military)"); §§ 119, 134, 911, & 912.

Moreover, the exclusion in § 107 is not a direct grant of aid from the United States to religion, and "[t]he grant of a tax exemption is not sponsorship since the government does not transfer part of its revenue to churches but simply abstains from demanding that the church support the state." *Walz*, 397 U.S. at 675. Consequently, "[t]here is no genuine nexus between tax exemption and establishment of religion." *Id*. *Texas Monthly* did not produce a majority overruling this holding in *Walz*. In fact, the Supreme Court in *Rosenberger v. Rector & Visitors of the Univ. of Va.* (decided after *Texas Monthly*) relied in part on the fact that there were no prohibited "direct money payments" in holding that state funding of printing costs of religious publications did not violate the Establishment Clause. 515 U.S. 819, 842-844 (1995). Justice Stevens (a member of the *Texas Monthly* plurality), joined a dissent in *Rosenberger* which stated

22

that a critical point in *Walz* was that "the [property] tax exemptions [in *Walz*] did not involve the expenditure of government funds in support of religious activities." *Rosenberger*, 515 U.S. at 881 n.7 (Souter, J., dissenting). "'The grant of a tax exemption is not sponsorship since the government does not transfer part of its revenue to churches but simply abstains from demanding that the church support the state.'" *Id.* (quoting *Walz*, 397 U.S. at 675); (*see also* Doc. 44 at 41-43). Thus, the estimated amount of money that may be excluded from federal income taxation due to § 107 is not a material fact regarding the primary effect of § 107 that could affect the outcome of this case.

### c.  Plaintiffs have not shown a triable issue regarding whether §  107 fosters excessive government entanglement with religion: it does not.

The taxing authorities of the United States necessarily have some contact with religion because "gross income means all income from whatever source derived." § 61(a); *Walz*, 397 U.S. at 674. Section 61 does not provide an exception for income derived from an occupation as a religious leader. But this contact between the United States and religion, or religious persons, does not create an unconstitutional "establishment" of religion through "excessive entanglement." At least one court has already held that the administration of § 107 does not give rise to excessive entanglement with religion when considering whether a taxpayer qualified for the exclusion of a housing allowance under § 107(2). *Flowers v. United States*, 1981 U.S. Dist. LEXIS 16758, at *18 (N.D. Tex. Nov. 25, 1981) ("The Court finds that the requirements of section 107 do not create the substantial entanglement of the kind which the Supreme Court was referring to in *Walz* . . . ."). Plaintiffs have not cited a case to the contrary.

All statutes touching on religion require some administrative contact of the government with religion. When that contact is appropriately limited it does not constitute "excessive entanglement," and is consistent with the Constitution. *Walz*, 397 U.S. at 676. (Excessive

entanglement "cannot mean absence of all contact" between government and religion.). To determine whether government contact with religion constitutes "excessive entanglement" the Court must "examine the character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority," *Lemon*, 403 U.S. at 615, and whether the relationship between government and religion "is a continuing one calling for official and continuing surveillance leading to an impermissible degree of entanglement" *Walz*, 397 U.S. at 675. "The test is inescapably one of degree." *Id.* at 674. Here, while § 107 puts government into contact with religion, it does not create "excessive entanglement" – and Plaintiffs offer no facts or supportable legal argument suggesting otherwise.

At base, Plaintiffs' argument falls back upon the bare allegation set forth in their Amended Complaint: "In order to limit the tax break provided by §107 to ministers of the gospel, the IRS must make complex, intrusive and subjective inquiries into religious matters." (Doc. 52 at 65; *see also id.* at 35; Doc. 13 ¶ 22 ("[T]he IRS and the Treasury Department must make sensitive, fact intensive, intrusive, and subjective determinations dependent on religious criteria and inquiries . . . .").) Plaintiffs' allegation, and the case citations in their brief,[6] do not suffice to raise a genuine dispute of material fact regarding whether § 107 fosters "excessive entanglement" between government and religion under the substantive law. Plaintiffs point to the

---

[6] The United States respectfully submits that the "excessive entanglement" prong of the *Lemon* test shows the acute need for a plaintiff making an Establishment Clause challenge to have been subjected to some contact from the government. The cases Plaintiffs cite involving § 107 to (ostensibly) provide facts to support their entanglement arguments do not stand for the proposition that any governmental involvement with religion was excessive. If any of the parties to the cases cited felt that the United States was "excessively entangled" with their religious beliefs in the course of any of the proceedings identified, they had every opportunity to file suit and vindicate their rights under the Establishment Clause.

"significant amount of evidence" they allege is required for the IRS to make a determination under § 107, but they cite no facts to support the allegation. (*See* Doc. 52 at 58-63.) Moreover, the quantum of proof does not appear to be a material issue under the governing law regarding what may be "excessive" entanglement. Rather, courts focus on the quality of the analysis undertaken, or the continuity and invasiveness of the surveillance.

Thus, it is constitutionally permissible for a government to determine whether a person's belief is "religious" and sincerely held. *Liberty Univ., Inc. v. Geithner*, 753 F. Supp. 2d 611, 640 (W.D. Va. 2010) (citing *Benning v. Georgia*, 391 F.3d 1299, 1313 (11th Cir. 2004), *vacated on other grounds*, 671 F.3d 391 (4th Cir. 2011); *Sutton v. Rasheed*, 323 F.3d 236, 250-51 (3d Cir. 2003)). It is constitutionally permissible for a religion to decide what is devotional, what is a religious belief, and what is sacred, and then for the state to learn that information and determine whether it meets the criteria for certain government action or inaction. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 707-08 (2012) (using the tenets of a religion to determine whether a person constituted a "minister" for purposes of that religion); *Colo. Christian Univ. v. Weaver*, 534 F.3d 1245, 1261-64 (10th Cir. 2008). The impermissible government entanglement comes when the government itself decides what is religious, sacred, or devotional. *See Hosanna-Tabor*, 132 S. Ct. at 707-09; *Colo. Christian Univ.*, 534 F.3d at 1261-64.

As the United States has described, § 107, its implementing regulations, and the manner in which it is administered avoid excessive government entanglement with religion. (Doc. 44 at 46-51.) The IRS utilizes permissible, neutral, and objective criteria to inquire into the existence of a taxpayer's religious beliefs or practices. (*Id.* at 49-51.) The IRS does not, however, evaluate the content of a taxpayer's religious beliefs, *see id.*, which minimizes entanglement and

maintains a government policy of neutrality toward religion, *see Zorach v. Clauson*, 343 U.S.
306, 314 (1952). Plaintiffs do not dispute these facts. Because the IRS does not attempt to
resolve any issues of religious doctrine, but rather seeks simply to verify an individual's position
according to the religion's self-evaluated tenets and practices, it is akin to the approach taken by
the Supreme Court in *Hosanna-Tabor* to determine whether a person was a "minister" who fell
under the ministerial exception to employment discrimination suits, *see* 132 S. Ct. at 707-08, and
avoids the concerns raised in *Texas Monthly* of the prospect of "government embroilment in
controversies over religious doctrine," *see* 489 U.S. at 20.

Plaintiffs offer no analysis of the foregoing substantive law regarding what does and does
not constitute excessive entanglement between government and religion. Instead, they offer facts
from prior cases or rulings by the IRS and conclude that those facts show excessive
entanglement. Those facts and rulings may support Plaintiffs' *belief* that the United States is
unduly involved with religion, but it is not enough to prove their position – or even show a
genuine dispute of material fact – on the question of whether there is excessive entanglement
between government and religion. Similarly, Plaintiffs offer only conclusory statements that
§ 107 constitutes "excessive entanglement" because of "official and continuing surveillance"
and/or monitoring of religious persons or entities, although they fail to provide a single factual
example of continuing surveillance or monitoring. (Doc. 52 at 63.) To the extent they seek to
incorporate their arguments regarding the evaluation of any one claim under § 107, their
arguments and factual predicates fail for the same reasons described above. Plaintiffs'
conclusory statements are insufficient to meet their burden on this issue at the summary
judgment stage.

### d.  Plaintiffs' reliance on the *Texas Monthly* plurality is misplaced.

This Court should not be distracted by Plaintiffs' freewheeling description of aspects of *Texas Monthly*. That decision is limited to the narrow facts before it regarding a sales tax exemption for religious publications, which are different than the facts here. The applicability of *Texas Monthly* is narrowly limited because its plurality opinion of three justices is not binding on lower courts except on the narrow question decided with the concurrence of at least two other justices. *See, e.g., TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1296-97 (11th Cir. 1998). In *Texas Monthly*, the question was whether a state sales tax exemption "violates the Establishment Clause or the Free Press Clause of the First Amendment when the State denies a like exemption for other publications." 489 U.S. at 5. The plurality's decision was that, "when confined exclusively to publications advancing the tenets of a religious faith, the exemption runs afoul of the Establishment Clause." *Id.*; *see also Budlong v. Graham*, 488 F. Supp. 2d 1252, 1256 (N.D. Ga. 2007) (state sales tax refund case involving an exemption related to religious publications); *New Orleans Secular Humanist Ass'n v. Bridges*, 2006 U.S. Dist. LEXIS 20020, at *16-17 (E.D. La. Apr. 17, 2006) (same). This case, however, is not a case involving state sales taxes and religious publications.

Instead, and as described above, this case invokes a number of different provisions in the Internal Revenue Code that involve the exclusion of in-kind housing or a housing allowance from a taxpayers taxable income. Such an exclusion is not limited to housing or a housing allowance provided to "ministers" in § 107. *See* §§ 119, 134, 911 & 912. Further, an atheist may lawfully make a claim for the exclusion in § 107 (*see* Doc. 44 at 8-21) which also expands its reach. Justice Blackman acknowledged that, had "atheistic literature distributed by an atheistic organization" come under the terms of the exemption in *Texas Monthly*, "the statute might survive Establishment Clause scrutiny." 489 U.S. at 29 (Blackman, J, concurring); *see also id.* at

26 (Blackman, J., concurring) ("The Establishment Clause value suggests that a State may not give a tax break to those who spread the gospel that it does not also give to others who actively might advocate disbelief in religion.").

Further, both before and after *Texas Monthly*, statutes that single out religious entities for a benefit have been held to be constitutional. "[W]e have not, and do not, adhere to the principle that the Establishment Clause bars any and all governmental preference for religion over irreligion." *Van Orden v. Perry*, 545 U.S. 677, 684 n.3 (2005) (citing *Cutter v. Wilkinson*, 544 U.S. 709 (2005); *Amos,* 483 U.S. 327; *Lynch v. Donnelly*, 465 U.S. 668 (1984); *Marsh v. Chambers*, 463 U.S. 783 (1983); *Walz*, 397 U.S. 664. Even the *Texas Monthly* plurality admitted that a tax benefit may permissibly target religion if there is "some overarching secular purpose that justifies like benefits for nonreligious groups." 489 U.S. at 14-15 & n.4.

After *Texas Monthly*, and without mentioning the case, the Court cited *Walz* as controlling the issue of religion-specific legislative exemptions from general statutory requirements without dissent. *Cutter*, 544 U.S. at 719; *see also Employment Division v. Smith*, 494 U.S. 872, 890 (1990), *superseded by statute as stated in Cutter*, 544 U.S. at 714-15 (inviting unsuccessful litigants to seek a religion-specific exemption from the general regulatory laws rendering them ineligible for unemployment compensation because of work-related "misconduct" involving ceremonial drug use). In *Cutter*, the Court explicitly acknowledged that government may create legislative exemptions specific to religious groups that were not conferred upon a wide array of nonsectarian groups as well as religious organizations, *Cutter*, 544 U.S. at 724-26, in contrast to what was required by the plurality opinion in *Texas Monthly*. The Court went on to uphold an exemption that granted benefits only to those with some religious affiliation on the grounds that the statute in question "confers no privileged status on

28

any particular religious sect, and singles out no bona fide faith for disadvantageous treatment." *Id.* at 724; *see also Cohen v. City of Des Plaines*, 8 F.3d 484, 491-92 (7th Cir. 1993) (citing *Walz* as support for its decision that a city ordinance allowing churches to operate nursery schools and day care centers without a special use permit did not "establish" religion).

*Cutter*'s citation to *Walz* shows continuity with pre-*Texas Monthly* decisions like *Amos*. Decided in 1987, in *Amos*, the Supreme Court drew upon *Zorach* and *Walz* in holding that a provision in Title VII of the Civil Rights Act of 1964 exempting religious organizations from the prohibition against religious discrimination in employment did not violate the Establishment Clause. 483 U.S. at 339. From *Walz*, the *Amos* court concluded that an exemption statute could be a permissible accommodation of religion. *Amos*, 483 U.S. at 334-35; *cf. Hosanna-Tabor*, 132 S. Ct. at 705-06 (affirming that there is a "ministerial exception" to employment discrimination laws like Title VII of the Civil Rights Act). "There is ample room under the Establishment Clause for benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference." *Amos*, 483 U.S. at 334 (quotation omitted).

### 3.   Plaintiffs have not shown a triable issue regarding whether § 107 is constitutional under equal protection's rational basis scrutiny: it is.

Plaintiffs offer neither contrary law nor genuine disputes of material fact to counter the proposition that § 107 survives rational basis scrutiny because it has the legitimate purpose of eliminating discrimination between secular and non-secular employees and among religious employees, all while limiting government contact with religion to objectively verifiable information that does not inquire into the content of religious tenets. *See Amos*, 483 U.S. at 339; *see also Locke*, 540 U.S. at 720 n.3; *St. John's United Church of Christ*, 502 F.3d at 638; *Templeton*, 719 F.2d at 1414 (§ 1402(e) and (g) are rationally related to Congress's intent to accommodate particular religious beliefs with an exemption from the requirement of paying

29

Social Security tax). Therefore, Plaintiffs cannot show that there is any issue for trial regarding whether § 107, or the manner in which it is administered, violate Plaintiffs' equal protection rights.

### III.   Conclusion

For all of the reasons cited herein and in the United States' opening brief in support of its motion, this Court should grant summary judgment in favor of the United States. Plaintiffs do not have standing to challenge the constitutionality of § 107 and its implementing regulations. They cannot show that § 107 is unconstitutional under *every* set of circumstances. *See Salerno*, 481 U.S. at 745. Plaintiffs have not even offered this Court a genuine dispute of material fact upon these issues. Therefore, this Court should grant summary judgment on all claims in favor of the United States.

Dated: August 12, 2013                    Respectfully submitted,

                                          JOHN W. VAUDREUIL
                                          United States Attorney

                                          */s/ Erin Healy Gallagher*
                                          ERIN HEALY GALLAGHER
                                          D.C. Bar Number: 985670
                                          U.S. Department of Justice, Tax Division
                                          Post Office Box 7238
                                          Washington, D.C. 20044
                                          Telephone: (202) 353-2452
                                          Fax: (202) 514-6770
                                          E-mail: erin.healygallagher@usdoj.gov


                                          */s/ Richard Adam Schwartz*
                                          RICHARD ADAM SCHWARTZ
                                          California Bar Number: 267469
                                          U.S. Department of Justice, Tax Division
                                          Post Office Box 683
                                          Washington, D.C. 20044
                                          Telephone: (202) 307-6322
                                          Fax: (202) 307-0054
                                          E-mail: richard.a.schwartz@usdoj.gov

                                          Counsel for Defendant

## CERTIFICATE OF SERVICE

I certify that, on August 12, 2013, service of the foregoing United States' Reply Brief in Further Support of its Motion for Summary Judgment was made upon Plaintiffs by filing it with the Clerk of Court using the CM/ECF system.

*/s/ Erin Healy Gallagher*
ERIN HEALY GALLAGHER